## WADE v. ORDWAY et als.

1. REPETITION OF CHARGE. *In absence of counsel on one side. Not approved but not error.* While it is improper for the Court to instruct the jury in the absence of a party's counsel, thereby depriving him of the opportunity to except or to ask for qualification of the instruction, yet the Court hold, where it can clearly be seen that no injury has been done to the party by the instruction given, in a case of such slight departure, no reversal can be had.
Case cited: Taylor v. Jones, 2 Head, 565.

2. PRACTICE. *Affidavit of juror will not be received. When.* Affidavits of jurors will not be received, for the purpose of showing that the jury misunderstood the charge of the Court, or that they failed to follow his charge, or that the verdict was rendered in a mistaken opinion as to the law or facts of the case.
Cases cited: 3 Hump., 333; 4 Hump., 516.

3. NEW TRIAL. *Evidence. Discovered by juror. And related after retirement. Affidavit the proper mode of bringing the fact before the Court.* Evidence submitted to the jury shall be sworn evidence, submitted in open Court, under the safeguards of the law, and open to cross-examination, or liable to be met by countervailing proof on the part of the party who may be affected by it; evidence, therefore, discovered by one of the jurors, and related to his fellows after retirement, is grounds for new trial. The affidavit of a juror is the mode of bringing such facts before the Court.
Cases cited: 6 Greenl. 379; Price v. Warren, 1 Hen. & Mumford, cited in Gra. & Waterman on New Trial, vol. 2nd, 335; Donston v. The State, 6 Hump., 275.

Wade *v.* Ordway *et als.*

4. JURY. *Duty of to follow the Court as to the law.* It is not error for the Court to instruct the jury that "they must take the law from the Court as it was charged, and not attempt to decide the law for themselves, etc." 4 Yerg, 114, 115; 1 Swan, 61.

FROM DAVIDSON.

Appeal from the Circuit Court. EUGENE CARY, Judge.

NEIL S. BROWN and J. D. WADE for Wade.

GUILD & SMITH and WM. F. COOPER for Ordway.

FREEMAN, J., delivered the opinion of the Court.

This suit is brought by Wade to recover about $22,000, or its value, of uncurrent bank bills, deposited with the defendants, to be sold by them as brokers, as they might be directed by Wade or his agent.

Several questions are urged here for reversal of the judgment had in favor of defendants in the Circuit Court, some or all of which we proceed to notice.

First, it is insisted there is reversible error in the action of the Circuit Judge as is claimed in charging the jury a second time, on their return into Court, in the absence of plaintiff and his counsel.

The facts, as stated in the record by His Honor himself, are substantially as follows: The jury were called in, after having been engaged for some length of time in considering the case, late in the evening, and inquired of by the Judge as to the cause of their

failure to agree, he asking them whether they were differing as to what the witnesses had stated, or as to the law of the case. He told them that if they were differing as to what the witnesses had said, he would have the witnesses recalled and interrogated as to their evidence; but if they were differing as to the law of the case, he would endeavor to instruct them, at the same time telling them "that the jury must take the law from the Court as it was charged to them, and not attempt to decide the law for themselves, in disregard of instructions of the Court; that if the Court erred it could be ascertained, and the Supreme Court could review and correct it, but if the jury undertook to decide the law for themselves, no one would know upon what principle they had decided; that their errors might not be ascertained, and the party injured thereby would be without remedy." At this point one of the jurymen stated to the Court that the matter on which they had disagreed was the question of what constituted ordinary diligence, and gave his own understanding in the form of a question to the Judge as to what it was, which, not being correct in the view of the Court, he stated to the jury the correct rule in reference to such diligence.

This is the statement of the facts, which the Court has put down in the form of an entry of record, giving his reasons for not granting the motion for a new trial.

The question is, does the above statement contain errors for which this Court should reverse?

While it is certainly a sound rule, and one that ought not to be departed from, that the counsel engaged in a case should be present when the Court gives his instructions to the jury as to the law of the case, yet this sound rule must not be pushed to the extent that a slight departure from it shall be held sufficient to put the inferior Court in error, and reverse the case. The principle on which the rule stands is, that the parties litigant may hear the law as given by the Judge to the jury, may thereby be prepared to except, in case it is deemed erroneous, or to ask for such qualification of the instruction as may be thought proper, or such additional instructions as the facts of the case may warrant. To hold that when the Court merely answers a question, giving the same instruction substantially as he had given in his original charge, and stating a rule to the jury to which no exception can fairly be taken, that an error has been committed for which this Court should reverse, would be to uphold the letter of the rule of practice, but to disregard its spirit and principle.

We hold, therefore, that where we can see clearly, as in this case, that no injury has been done to the party by the instruction given, in a case of such slight departure from propriety as we find here, that this Court cannot reverse for such action. We have examined the cases referred to by counsel supposed to maintain a different view, and need only say that most, if not all, of them, were very different in their facts from the one now under discussion, and in so far as they may seem to carry the rule further than we have above

indicated, we do not feel disposed to approve them. We see in this record what was done and said, from the statement of the judge himself, which we must take as the most trustworthy information to be had, on the general principle that every presumption is in favor of the integrity and uprightness of a high judicial officer, acting under the weighty sanctions of his high position.

It is insisted, however, that the remarks of His Honor, as to the duty of the jury in following the law as given by the Court, and the danger of a juror taking the law into his own hands were improper, and that these remarks did influence and control the action of the four or five jurymen who had, up to that time, been favorable to plaintiff's side of the case. The case of Taylor *v.* Jones, 2 Head, 565, is supposed to sustain this proposition. While we doubt the propriety, under our system of jury trial, of attempting to hasten the action of a jury in coming to a conclusion on the facts of the case, or urging upon them considerations based on the expense and annoyance of another trial, in order to induce them to agree upon a verdict, as being calculated, coming from such a source, to unduly influence the minds of a jury by considerations not growing out of the evidence in the cause, yet we are unable to see anything in what was said in this case to which any objection can properly be urged. What was said in this case is strictly correct. It is the duty of the jury in a civil case to follow the law as given them by the Court, and not to take it into their own hands. In the case referred to, the Court told the jury of the

importance of agreeing, on account of expense to the parties; that he must keep them together until they could agree, and then said to them that in some cases he had been almost constrained to tell juries that it would be better for them to find a wrong verdict than not to agree at all, as any error *we* may commit may be corrected by the Supreme Court." This Court reversed that case on account of the above remarks to the jury, mainly on the ground that it was, in the language of the Court, a mistake in His Honor to tell them that this Court could correct any errors they might commit, on account of the great weight given here to the finding of a jury. The Court also disapproved of the threat of His Honor to keep the jury together until they did agree. We think the case was properly decided, but find in it nothing that will sustain the objection presented to what His Honor said in the present case.

An affidavit of a juror is presented, in which he purports to give the facts as to what occurred when the jury came into the court-room. This juryman says that "when he put the question as to what was ordinary diligence, the Judge did not reply to his question, but remarked to the jury that if they took the law in their own hands, nothing could be done, but if he (the Court) charged the law wrong, he would be corrected by the Supreme Court." He then goes on to say that next morning the other four of the jurors who had been with him had gone over to the other side, on the ground, as they said, that His

Honor, in the above remarks, was alluding to them, and had told them, in effect, as they took it, they were doing wrong. We need only say that if the matter of this affidavit could be looked to at all, it would not be sufficient on which to affect the verdict of the jury in this Court. It would amount to nothing more than a statement by a juryman, showing the grounds and motives that influenced other members of the jury in coming to their conclusions, or what they had said were the grounds, as he understood them. It appears, too, from what the affiant says the Judge did say, that there was nothing in it that should have led to such a conclusion, as it does not appear that His Honor knew anything as to how the jury stood, nor does the remark, in the slightest degree, indicate an application to the one or other party of the jury, as they stood divided. We are bound to presume entire impartiality in the Judge, and see nothing in the slightest degree to militate against this presumption in the facts of this record. On this subject the rule is too well settled to need discussion, that affidavits of jurors will not be received for the purpose of showing that the jury misunderstood the charge of the Court, or that they failed to follow the charge, or that the verdict was rendered on a mistaken opinion as to the law or the facts of the case. 3 Hum., 333; 4 Hum., 516. Such an affidavit as the one presented should not be received at all, and certainly is entitled to no weight whatever. Affidavits of jurors must be received with great cau-

tion, and while there are cases in which they are proper, as is recognized by the remark of this Court in 4 Hum., 518, yet clearly the facts disclosed in the one now under consideration, do not bring it within the rule.

We come now to a question presenting more of difficulty in its solution. It is insisted that a new trial should have been granted because of statements, in the form of new evidence of facts ascertained by himself during the consideration of the case, were presented to the jury by one of their number.

The facts on this question are presented in an affidavit of a juror, F. W. Ballow. He says that a discussion had been had at the bar, in argument of the case, as to whether Mr. Lusk could have seen the robbers as they passed out of the door, on the day in which it was alleged that the office of defendants was robbed, by knocking Mr. Lusk down; and as to whether he could have seen them, as he stated, unless he had been standing up; and if so, that he was guilty of negligence in not giving the alarm promptly, as it was in open day-light, on a public street, near the Public Square, in the city of Nashville. The affidavit further states that the plaintiff's counsel was interrupted by defendants' counsel, who stated that the counter was not of wood, but that the iron railings, that had been proven to be about three feet high on the counter, ran down to the floor, with holes through it, so that Lusk (the witness) could see through them whilst lying on his back on

the floor. He then adds, as the new evidence, that Mr. Robertson (one of the jury) came into the jury room one morning before they had agreed upon a verdict, and said "he had discovered some new evidence; that he had been round and examined the counter, and found that the iron railing ran down to the floor. He described it as a kind of lattice work, and said he asked if the counter then was as it had been when the robbery was committed, and was told it was; and that it could be seen through by Lusk whilst lying on the floor." It is evident from the facts detailed in this affidavit that the question as to whether the witness (Lusk) could see the robbers as they passed out of the door, was one that had attracted the attention of the jury, and probably had been a matter of discussion among them, and in some way was deemed material in coming to their conclusion. The evidence of Lusk, who was the teller of the bank (or brokers' office) of defendants, and the only man in the office at the time of the alleged robbery, had shown that he was standing at the counter, leaning upon it; that while in this position he was struck down by a "slung-shot," as he described it, striking over the eye, felling him to the floor; that when he fell he was senseless from the blow, and, when he recovered, he found himself on the floor with a man on him, holding him by the throat; he says that he swooned again, and when he became conscious of what was going on around him, he saw another at the safe, or about the safe. On

cross-examination, he was asked if he saw the robbers when they went out of the front door, and answered "that he saw one of them as he went out of the front door and shut it." In describing the counter behind which he was standing, and which ran entirely across the room, he said the counter was made of wood, and rose up from the floor higher than his waist; that it was higher than usual; that upon this counter was an iron railing, some two or three feet high, which was fastened to the counter firmly; that this railing was a kind of lattice work, and was put there to keep any one from getting over the counter, and yet could be seen through. This railing—about midway of it—had an opening about twenty inches wide, where the money was paid out, and through this opening the blow was given. On the testimony of this witness rested almost alone the case for the defendant, and from the mode of his cross-examination, and from the matter of his testimony, it is evident that the effort of the plaintiff was to break him down, by showing inconsistencies, or, at any rate, unreasonableness and improbability in the story told by him. This was so apparent to the defendants that they felt the necessity for sustaining him by proof of his good character and standing in the community.

With this summary of the leading facts bearing on this point, the question is, whether, on sound principles, the statement made to the jury by the juryman was of such a character as that its introduction was

cause for a new trial, and such error as this Court must treat as basis for reversal.

It is urged, in the argument of the learned counsel for defendants, that we have no case in our books in which it has been held that the affidavit of jurors will be received in a civil case, to show that one of the jurors gave information to the jury after retirement. Several cases are cited from our sister States and the Supreme Court of the United States, where it has been held that new trials would not be granted on information given to the jury by a fellow-juror, after retirement. Some of them qualifying the rule, however, by the statement that when substantial justice has been done, a new trial would not be granted, and others treating the fact that the jurors stated they were not influenced by the new evidence in formation of their verdict, as a material consideration. See 6 Greenl., 379 ; *Price* v. *Warren,* 1 Hen. and Munford; cited in Gra. & Waterman on New Trial, vol. 2nd, 355.

We believe it is true that in no civil case has it been held in Tennessee that a new trial should be granted on the fact disclosed by affidavit of a juror, that statements were made to the jury by a fellow-juror, bearing on the matter of investigation; yet we find a number of criminal cases where new trials have been granted upon such affidavits. We may add that no civil case is shown where it has been held in our State that such fact did *not* vitiate the verdict, so that the direct question is, perhaps, an

open one. We may well look to the cases reported in our State, as furnishing reasons, and analogies to guide us to our conclusion on the question.

In case of *Donston* v. *State*, 6 Hum., 275, one of the jurymen stated to his fellows, after they had retired, that he had heard a witness who had been examined on the trial (whose credibility had been attacked), sworn before the grand jury, and that his statement was the same he made before the traverse jury. This was held to vitiate the verdict. It is true it is said in the opinion, the jurors making the affidavit stated, that these statements greatly influenced them in finding the verdict. But the principle on which Judge Turley rests the opinion of the Court seems not to have been based on this statement, for he says: "It has always been held in this State that testimony given to a jury, after it has left the presence of the Court, vitiates the verdict, because it is not given on oath, and is given without the knowledge of those to be affected by it, and who have, therefore, no opportunity of meeting and repelling it." In *Booby* v. *The State*, 4 Yer., 114, 115, a new trial was granted on affidavits disclosing statements bearing upon the case, made by a juror to his fellow-jurors after their retirement. In that case it is true the statement is made in the affidavits that the jury were influenced by the facts given to them by the juryman, but the principle laid down by the Court does not grow out of this fact, nor is it based on it. Judge Whyte, in the opinion of the Court, says:

" The verdict is too palpably vicious to require the citing of authorities to prove it ought not to stand. What the juror knew of the defendant ought to have been proposed and offered in Court, and, if admissible, there rendered, to be observed upon by defendants' counsel.    In case of *Sam* v. *The State*, 1 Swan, 61, a juryman made a statement as to where the line of the county was, it having been a controverted question as to whether the offence was not committed in a different county than the one in which the party was indicted.

In this case the juryman (Brock) stated in answer to interrogatories put by the Court, as shown by the bill of exceptions, " that the information communicated by his fellow-jurors exercised no influence whatever upon him in making up the verdict, and that he thought, or believed, they would have come to the same conclusion from the testimony in the cause. Judge McKinney, in the opinion in this case, says, in substance, that it was not for this Court to say whether the testimony was sufficient to have supported the verdict, independent of the statement made to the jury.    Neither was it relevant to inquire what influence the improper evidence received by the jury may, or ought to have exerted upon their minds in settling the disputed question of venue.    It is sufficient, he adds, that while determining this question they received fresh evidence which, if, indeed, it were not wholly without effect, must have conduced, in some degree, to the decision of the controverted point.
    16

He then goes on to state the rule, that the verdict of the jury must be found on the evidence delivered to them in Court, in the presence of the Judge and parties. · He then states the rule on p. 65 to have been long established and inflexible, to which no exception can be admitted, either in civil or criminal cases. It is true, he says, in criminal cases it is more emphatically the right, because of the provision of our Constitution that "the accused shall have the right to meet the witness face to face." He then proceeds to vindicate the rule on sound principles of reasoning, that we think eminently satisfactory. He says to hold to opposite views would expose our jury trials to the danger of being perverted to the grossest injustice and oppression. In answer to the idea that the Judge might say that there was sufficient evidence adduced at the trial to justify the finding of the jury, and that the evidence improperly given to them could have had no influence upon the verdict, that this was purely a matter of fact not in the province of the Court to determine. It is impossible he should be able to do so, because the law had no criterion by which to know or ascertain the effect which the admission of improper evidence (if of any force or relevancy whatever) may produce on the verdict of the jury. The effect might be different, and of necessity would be so, on different minds, according to the mental and moral qualities of the individuals composing the jury, their intelligence, powers of discrimination, and a thousand other considerations.

And, therefore, the law excludes all irrelevant and illegal evidence. He goes on then to remark, upon the statement of the juror that he was not influenced, treating this as not of any weight, and concludes with the rule that when improper evidence is allowed to go to the jury, it is enough that the case may have been prejudiced thereby, and the law will so presume.

It is true all these cases were criminal cases, but the principle on which they go is equally applicable to civil as well as criminal cases; that is, that the evidence submitted to the jury shall be the sworn evidence, submitted in open court, under the safeguards of the law, and open to be sifted by a cross-examination, liable to be met by countervailing proof on the part of the party who may be affected by it. We can see no sound reason why the rule should be departed from in civil cases and upheld in criminal ones, as it is based on principles equally applicable to the one as to the other. And such was the opinion of Judge McKinney in the case cited, though it may not have the weight of a positive decision, because said in a criminal case, and not a civil one. We may add, that we see nothing in the state of things around us in reference to public morals or individual sensibility, where property rights are concerned, to make us feel that any and every safeguard protective of our jury trials from improper influences should not be strongly upheld. On the contrary, we see much that makes us feel the necessity, or, at any rate, the propriety, of not only maintain-

ing all the safeguards heretofore established, and even, if possible, adding others, in order to insure the administration of justice from even the suspicion of being tainted, and thus maintain in the public mind a proper respect for law and justice, as administered by the courts of the country. We therefore hold, that the facts presented by the affidavit in the record show that testimony went to the jury that might well have influenced them in coming to their conclusions; and, seeing this, we cannot undertake nicely to weigh and ascertain the amount of influence such facts may have had, and for this cause the case must be reversed. We may add that we treat the affidavit as a proper mode of bringing the facts before the Court, as, in such a case, in no other way, probably, could the fact be developed, the deliberations of the jury, under our system, being secret.

We need not examine other questions presented, nor the question of the deposition not read, but taken out by the jury. Probably we might conclude this would have been an additional ground for reversal, but as such a thing is not likely to occur again, it is not necessary to decide the question.

Let the case be reversed and remanded for new trial.