**Lawrence LOEFFLER, Plaintiff–Appellant,**

v.

**Fred M. KJELLGREN, et al., Defendants–Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 18, 1994.

Permission to Appeal Denied by Supreme Court Sept. 12, 1994.

Douglas S. Johnston, Jr., Nashville, for plaintiff/appellant.

Peter Curry, Matthew C. Lonergan, Boult, Cummings, Connors & Berry, Nashville, for defendants/appellees.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff from the trial court's judgment dismissing plaintiff's claim for breach of contract, order granting the defendants a new trial, judgment entered in favor of defendants and dismissing plaintiff's age discrimination cause of action, and order denying plaintiff's motion for a new trial. Plaintiff filed his complaint against defendants Fred M. Kjellgren and Fleetline Products, Inc., alleging breach of a written contract of employment and violation of Tennessee's statute prohibiting discrimination on account of age, the Tennessee Human Rights Act. Tenn.Code Ann. § 4-21-101, et. seq.

The pertinent facts are as follows. In early 1988 plaintiff held the position of president of Aeropro, a Richmond, Indiana company that manufactured and sold plastic sheets. Defendant Fleetline Products, Inc. (Fleetline) was a customer of Aeropro. Through this business relationship, plaintiff and defendant Kjellgren, president and owner of Fleetline, began discussing the possibility of Fleetline manufacturing its own plastic sheets, with the assistance of plaintiff. Defendant Kjellgren and plaintiff first attempted to purchase Aeropro; however, the owners of Aeropro refused to sell the company to them. Plaintiff also proposed they form a new company. Under plaintiff's proposal, he would be forty percent (40%) owner, the necessary capital would be raised based upon defendant Kjellgren's credit, and plaintiff's forty percent (40%) interest in the company would be purchased by payment of $25,000 per year for four years, beginning at some point after the first three years. However, defendant Kjellgren did not elect to pursue the proposal. Thereafter, the parties began negotiating the employment of plaintiff by defendant Fleetline.

In August 1988, defendant Kjellgren flew to the Dayton, Ohio airport to meet with plaintiff and to discuss the terms of plaintiff's proposed employment. Subsequent to this meeting, defendant Kjellgren sent plaintiff a letter dated 15 August 1988, which stated in pertinent part as follows:

This letter will confirm my interest in employing your services to establish and run a plastic company (splash guards).

As you requested, I have outlined your expectations for compensation:

1) First year salary $45,000.00
2) Second year salary $50,000.00
3) Participation in group insurance plan provided by Fleetline.
4) Reimbursement for relocation to Tennessee.
5) After working for four (4) years, you will be provided a $25,000.00 per year for four (4) years for consulting fees.

Thanking you, in advance, and hoping to hear from you in the very near future, I remain,

Yours very truly,

Fred M. Kjellgren
President

Plaintiff testified the above letter constituted an employment contract. He further testified the $100,000.00 for consulting services, which was to be paid over four years, was his pay-out for his contribution to the company. Furthermore, in November 1989, plaintiff prepared an Employment Agreement retroactively dated 12 September 1988, the day he began working at Fleetline, which he submitted to defendant Kjellgren. Plaintiff testified he prepared the Employment Agreement because "we still had not really provided for a pay-out of my $100,000.00 benefit and I wanted to make sure that it would be paid to my heirs or to my estate." Defendant Kjellgren, however, refused to sign the agreement. In fact, defendant Kjellgren testified that when plaintiff presented the Employment Agreement to him, he responded by telling plaintiff that "he was crazy; he

didn't have a contract." Plaintiff testified that defendant Kjellgren responded by telling him that the Employment Agreement was not necessary and that he would "stick with the [15 August 1988] letter."

Defendant Kjellgren called plaintiff into his office at the close of business on Friday, 8 March 1991, and informed him that he was being "laid off." Plaintiff testified that defendant Kjellgren explained that business was bad and that the business could not afford to keep him. Plaintiff further testified that while he was working for Fleetline, his job functions became increasingly focused on sales in the plastics department. However, his job was not exclusively focused on sales. Plaintiff was employed as the manager of the plastics department. Among other things, his job duties included: managing employees in the plastics department; maintaining quality control; ordering raw materials; maintaining efficiency in the plastics department; improving procedures in the plastics department; maintaining the equipment; and scheduling the operation of the machinery. Plaintiff was age sixty-six at the time of his termination.

Stephen O'Connell began working as sales manager for Fleetline on Monday, 11 March 1991. Mr. O'Connell's duties focused exclusively on sales. He was not hired to work in the plastics department; instead, he was hired to focus on the sale of the entire Fleetline product. Mr. O'Connell turned forty years of age the day following his hire by Fleetline.

Plaintiff filed suit against defendants on 27 June 1991, alleging breach of a written contract of employment and violation of Tennessee's statute prohibiting discrimination on account of age, the Tennessee Human Rights Act. The case was first tried to a jury on 21, 22, and 23 September 1992. At the close of plaintiff's proof, the court granted defendants' motion for a directed verdict as to the breach of contract claim, finding that the 15 August 1988 letter did not constitute an offer. The court, however, denied defendants' motion for a directed verdict as to the age discrimination claim. The jury found in favor of plaintiff and returned a total verdict of $277,157.00. Defendants then filed a motion for judgment in accord with the motion for a directed verdict, or, in the alternative, a motion for a new trial. The court denied the motion for judgment in accord with the motion for a directed verdict, but granted the motion for a new trial.

On 17, 18, and 19 May 1993, the second trial was tried to a jury on the age discrimination claim only. The jury returned a verdict in favor of defendants. Plaintiff filed a motion for a new trial, but the court denied the motion.

Plaintiff/appellant presents the following issues for our review:

I. The trial judge erred in granting a directed verdict on the contract claim;

II. The trial court abused its discretion in granting Defendant[s] a new trial;

III. The trial court erred in using Defendants' proffered jury instructions in the second trial;

IV. The trial court erred in its jury instructions regarding the elements to be proved by the plaintiff in the second trial;

V. The [c]ourt erred in refusing to instruct the jury on the availability of punitive damages;

VI. The trial court made prejudicial comments on the evidence;

VII. The verdict in the second trial is contrary to the weight of the evidence.

We affirm the trial court in all respects.

I.

■ We first address plaintiff's issue as to whether the trial court erred in granting a directed verdict on the contract claim. The trial court directed the verdict on the contract claim on the ground that the 15 August 1988 letter did not constitute an offer. Specifically, Chancellor High stated: "I am of the opinion that this August 15th letter does not meet the legal definition of an offer; a mere expression of opinion or a prophecy of what's to come is not an offer." We agree.

■ When reviewing a trial court's grant of a directed verdict on motion of a defendant, it is not this court's duty to weigh the

evidence. *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn.1992).

Instead, it is an appellate court's duty to look at all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences to that party, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should be directed only where a reasonable mind could draw but one conclusion.

*Id.*, quoting *Goode v. Tamko Asphalt Products, Inc.*, 783 S.W.2d 184, 187 (Tenn.1989). Furthermore, "[o]nly if there is no material evidence in the record which would support a verdict for the plaintiff under any of his theories which he has advanced, may the trial judge's action in directing a verdict be sustained." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn.App.1990). Based on the record before us, when we take the strongest legitimate view of the evidence in favor of plaintiff, we find no material evidence that would support a verdict for plaintiff on the contract claim.

The 15 August 1988 letter does not, as a matter of law, create an enforceable contract for an eight year term. In *Jamestowne on Signal* this court stated that an enforceable contract must result from a meeting of the minds of the parties and must be sufficiently definite to be enforced. *Jamestowne on Signal*, 807 S.W.2d at 564. Additionally, the court stated that "a mere expression of intent or a general willingness to do something does not amount to an 'offer.'" *Id.* (citing *Talley v. Curtis*, 23 Tenn.App. 181, 129 S.W.2d 1099 (1939)).

After examining the 15 August 1988 letter, we find the trial court's dismissal of plaintiff's contract claim to be proper. The letter merely confirms defendants' "interest" in employing plaintiff's services and outlines, per plaintiff's request, plaintiff's "expectations for compensation." The letter does not offer the plaintiff a contract of employment for an eight year term.

Furthermore, there is a presumption in Tennessee that employment is terminable at will. *Bates v. Jim Rule Chevrolet, Inc.*, No. 16, 1990 WL 51295, at *10 n. 4 (Tenn. App. 26 April 1990) (citing *Combs v. Standard Oil Co.*, 166 Tenn. 88, 59 S.W.2d 525 (1933)). One Tennessee federal district court has espoused that to overcome this presumption, the employer must use specific language which guarantees employment for a definite term. *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F.Supp. 1273, 1280 (M.D.Tenn.1990). We find that the 15 August 1988 letter simply set forth what plaintiff could expect to earn by way of compensation if he continued to work for Fleetline; there is no guarantee of employment for a definite term. The letter does not constitute a contract of employment for an eight year term as the plaintiff argues.

Based on the foregoing, we find the 15 August 1988 letter was not a contract of employment. Moreover, plaintiff was an employee-at-will and thus was terminable at will. The 15 August 1988 letter upon which plaintiff relies simply set forth Fleetline's intent to pay plaintiff a certain amount while he was employed; it, therefore, did not constitute an offer. After reviewing the evidence, we find no material evidence that would support a verdict for plaintiff. We, therefore, find that the trial court did not err in directing a verdict on the contract claim.

## II.

We next address plaintiff's second and seventh issues: Whether the trial court abused its discretion in granting defendants a new trial, and whether the verdict in the second trial is contrary to the weight of the evidence.

A trial court is given wide latitude in granting a motion for new trial, and a reviewing court will not overturn such a decision unless there has been an abuse of discretion. *Mize v. Skeen*, 63 Tenn.App. 37, 42–43, 468 S.W.2d 733, 736 (1971); *see also Tennessee Asphalt Co. v. Purcell Enter.*, 631 S.W.2d 439, 442 (Tenn.App.1982). As the thirteenth juror, the trial judge is required to approve or disapprove the verdict, to independently weigh the evidence, and to determine whether the evidence preponderates in

favor of or against the jury verdict. *Mize,* 63 Tenn.App. at 42, 468 S.W.2d at 736. If the trial judge is dissatisfied with the verdict, he should set it aside and grant a new trial. *Hatcher v. Dickman,* 700 S.W.2d 898, 899 (Tenn.App.1985) (quoting *Cumberland Tel. & Tel. Co. v. Smithwick,* 112 Tenn. 463, 469, 79 S.W. 803, 804 (1904)).

■ In the present case, the trial judge granted the defendants' motion for a new trial and specifically stated that he was doing so in the exercise of his function as a thirteenth juror. The trial judge stated: "The Court is further of the opinion that [d]efendants' [m]otion for a [n]ew [t]rial is well taken, the Court being of the opinion as thirteenth juror that the verdict of the jury on [p]laintiff's age discrimination claim was contrary to the weight of the evidence." We find that the trial court did not abuse its discretion in granting a new trial.

Although the trial court had directed a verdict for the defendants on the plaintiff's contract claim and had advised the jury that the contract claim was no longer part of the case, both plaintiff's counsel and expert witness referred to the "contract" during the trial. Plaintiff's counsel relied upon the testimony of an expert economist to establish damages and stated in front of the jury: "Now, sir, for those of us who are uninitiated, we would simply take a look at this *contract* and we would calculate—there is about a year and a half lost of the work—and then how is it that you arrived at this bottom line figure, $177,157.00?" (emphasis added). The expert responded by detailing how he arrived at the $177,157.00 figure, based upon the amount stated in the "contract" and various fringe benefits that would have been provided by the employer. Although the court had directed the verdict on the contract claim, the alleged contract still could have erroneously influenced the remainder of the trial and the jury's verdict.

■ The jury returned a verdict for exactly $177,157.00 in salary and $100,000.00 in damages. It is the longstanding rule in Tennessee that the jury must take the law from the court as charged and is never allowed to decide the law for themselves. *See Wade v. Ordway,* 60 Tenn. 229 (1873); *Tate v. Gray,* 36 Tenn. 591 (1857). However, in the present case, the jury's verdict was influenced by the alleged contract. Despite the court's ruling that as a matter of law no contract existed, the jury returned a verdict for exactly $177,157.00 in salary, which amount was based upon the alleged contract.

Acting as the thirteenth juror, the trial court granted the defendants' motion for a new trial because the jury's verdict was contrary to the weight of the evidence. We now find that the trial court's grant of defendants' motion for a new trial was proper.

■ Plaintiff argues that in the second trial the evidence clearly preponderates against the verdict and that the trial court, acting as the thirteenth juror, should have granted plaintiff a new trial. On appeal from a jury verdict, this court does not weigh the evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn.1978).

■ In an age discrimination suit, the ultimate issue is whether age was a determining factor in the employer's decision that adversely affected the employee. *See Bruce v. Western Auto Supply Co.,* 669 S.W.2d 95, 97 (Tenn.App.1984) (citing *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1180 (6th Cir. 1983)). Moreover, an age discrimination plaintiff has the burden of establishing a prima facie case by using the traditional criteria set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) or through direct, circumstantial, or statistical evidence. *See Bruce,* 669 S.W.2d at 97; *see also Simpson v. Midland–Rose Corp.,* 823 F.2d 937, 940 (6th Cir. 1987). Plaintiff proceeded under the *McDonnell Douglas* guidelines in this case.

■ "Under *McDonnell Douglas,* a plaintiff must demonstrate that: (1) he was a member of the protected class; (2) he was subjected to adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person. Proof of all four criteria raises a presumption of age discrimination." *Brenner v. Textron Aerostructures,* 874 S.W.2d 579, 583 (Tenn.App. 1993) (citing *McDonald v. Union Camp,* 898 F.2d 1155, 1160 (6th Cir.1990); *Simpson,* 823

F.2d at 940; *Krause v. R.R. Donnelly & Sons Co.*, No. 89–296–II, 1990 WL 18186, 1990 Tenn.App. LEXIS 141 (Tenn.App. 2 March 1990)). It is undisputed that plaintiff satisfied the first three requirements under the *McDonnell Douglas* approach. Plaintiff was age sixty-six when he was terminated, and the Tennessee Human Rights Act prohibits an employer from discriminating in either the hiring or firing of an individual who is at least forty years of age. Tenn. Code Ann. §§ 4–21–401, 4–21–407 (1991 & Supp.1993). However, the parties dispute whether plaintiff was replaced by a younger person.

The proof shows that plaintiff was terminated at the close of business on Friday, 8 March 1991. The proof further shows that on Monday, 11 March 1991, Mr. Stephen O'Connell began working for Fleetline and that on the following day Mr. O'Connell turned forty. Plaintiff argues he satisfied the fourth prong of the *McDonnell Douglas* guidelines by proving that Mr. O'Connell was younger and that Mr. O'Connell replaced him.

Plaintiff argues that at the time of his termination, his chief function at Fleetline was the sale of Fleetline's plastic splash guards. Plaintiff further argues that because one of Mr. O'Connell's functions as sales manager was to oversee sales of plastic products, Mr. O'Connell replaced him. However, the proof shows that plaintiff was employed as the manager of the plastics division at Fleetline, and as outlined previously, his duties included much more than merely overseeing the sales of the plastic products. Mr. O'Connell was employed as the manager of sales for Fleetline, and his duties focused exclusively on sales. Mr. O'Connell was not hired to work in the plastics department; he was hired to focus on the sale of the entire Fleetline product.

Plaintiff also argues that other of his job functions were absorbed by Ms. Sherry Martin, age 38 at the time. However, as this court stated in *Brenner*: "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Brenner*, 874 S.W.2d at 583 (quoting *Lilley v. BTM Corp*, 958 F.2d 746,

752 (6th Cir.1992)). Based on the record before us, we cannot find that plaintiff was replaced by a younger person. Therefore, plaintiff did not meet his *prima facie* case under the *McDonnell Douglas* guidelines.

Furthermore, even if plaintiff had proven his *prima facie* case under the *McDonnell Douglas* guidelines, defendants came forth with several reasons that would have rebutted the presumption of discrimination. Once an age discrimination plaintiff has established a *prima facie* case, the burden of proof shifts to the employer to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the employment decision. *Silpacharin v. Metropolitan Gov't*, 797 S.W.2d 625, 629 (Tenn.App.1990); *Bruce*, 669 S.W.2d 95, 97 (Tenn.App.1984). Defendants proved at trial that Fleetline no longer needed plaintiff's services because the plastics division no longer needed his supervision. Defendants also proved that plaintiff's salary of $50,000.00 per year was one of the highest in the company. These facts are material and sufficient to support a finding that plaintiff was not terminated because of his age, but for a valid business reason.

In the second trial, the jury returned a verdict for defendants. The jury found that plaintiff had not been subjected to unlawful age discrimination. The trial court denied plaintiff's motion for a new trial, and plaintiff now argues the verdict in the second trial is contrary to the weight of the evidence. We find the trial court properly denied plaintiff's motion for a new trial and that there is material evidence to support the verdict of the jury. *See Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn 1978).

### III.

We now address plaintiff's third, fourth, and fifth issues concerning jury instructions. Plaintiff first attacks a jury instruction proffered by defendants which reads as follows:

In cases where the hirer and firer of the plaintiff are the same individual and the plaintiff's termination of employment occurs within a relatively short time span following the hiring, a strong inference

exists that discrimination was not a determining factor for the adverse action taken by the employer, and that the employer's stated reason for acting against the employee isn't pretext.

Plaintiff attacks this instruction on procedural grounds first. Plaintiff argues that defendants did not submit the instruction to the court or to adverse counsel until the court had concluded reading its charge. Plaintiff further argues that defendants did not provide a copy to counsel for plaintiff until counsel requested the copy. Plaintiff next contends that the court simply accepted the proffered charge and began reading it before plaintiff's counsel had time to examine it. Plaintiff concludes that "the proffered instruction invades the province of the fact finder, is highly prejudicial to the [p]laintiff, misstates the law and is an inaccurate reflection of what was held in the case cited."

■■ Tennessee Rule of Civil Procedure 51 allows for the submission of requested instructions prior to charging the jury, but also specifically allows the court to receive requests for instructions at any time before a jury retires. *See* Tenn.R.Civ.P. 51.01 and committee comment. Davidson County Local Rule 24 requires that upon submission of special requests for instructions to the court, copies should be furnished to adversary counsel. Defendants argue that their counsel had prepared a number of special requests, but did not know which requests would be submitted until after the court completed its charge to the jury. Defendants further argue that after hearing the court's charge, they submitted only one request, and a copy was provided to adversary counsel. Based on the record before us, immediately upon submitting the special request to the court, adversary counsel asked for a copy of the instruction, and a copy was provided to counsel. The procedural challenge is without merit.

■■ Plaintiff also challenges the jury instruction itself. Plaintiff argues the instruction was highly prejudicial to plaintiff, misstated the law, inaccurately reflected what was held in the case cited, and invaded the province of the jury. Tennessee Rule of Appellate Procedure 36(b) states that a judg-

ment should "not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn.R.App.P. 36(b). Tennessee courts have held that "in order to amount to reversible error it must appear that the jury was misled by the erroneous charge." *Carney v. Coca Cola Bottling Works of Tullahoma*, 856 S.W.2d 147, 150 (Tenn.App.1993) (citing *Hutchison v. Teeter*, 687 S.W.2d 286, 288 (Tenn.1985); *Helms v. Weaver*, 770 S.W.2d 552, 553 (Tenn. App.1989)).

We do not think the instruction more likely than not misled the jury, based upon the whole record. This issue is without merit.

Plaintiff next challenges the following instruction:

> In this action plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:
>
> > One, that plaintiff was within the protected category, that is, between 40 and 70 years of age. 40 and 70 years is set by the statutory law of the laws of this state. If you're over 70 you're out of luck. I guess they figure you're too old if you're over 70 to have any protection under the age discrimination. You ought to retire, I guess.
> >
> > Number two, plaintiff was discharged by defendant.
> >
> > Number three, plaintiff was replaced by a younger person.
> >
> > Number four, the discharge was not for good cause or other legitimate business reasons.
> >
> > Number five, the plaintiff's age was a determining factor in defendant's decision to discharge the plaintiff.
> >
> > The burden of proof by a preponderance of the evidence is upon the plaintiff to prove each of the above elements. If you find each of the above elements to be proven to your satisfaction, your verdict should be for the plaintiff. If you find any of the essential elements to be

lacking, your verdict should be for the defendant.

As plaintiff noted in his brief, the court identified six elements upon which the plaintiff bore the burden of proof as part of its introductory remarks in the first trial. Prior to the second trial, plaintiff filed a written objection to this instruction. In response to this objection, the court deleted the sixth element regarding the burden of proof on the defendants' intent. Plaintiff made no objection to the revised instruction. However, plaintiff now argues that the instruction quoted above, containing five rather than six elements, is improper.

■ Tennessee Rule of Appellate Procedure 36(a) states: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn.R.App.P. 36(a). Furthermore, Rule 3(e) of the Tennessee Rules of Appellate Procedure provides:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Plaintiff's motion for new trial states as ground number four: "The trial court erred in jury instructions in the second trial." Rule 3(e) requires an appellant to specify in his motion for new trial the particular portions of the jury instructions from which he complains. *State v. King*, 662 S.W.2d 77, 79 (Tenn.Crim.App.1981). The *King* court explained: "The grounds relied upon must be specified with reasonable certainty in a motion for new trial to advise the trial court and opposing counsel of the alleged error or irregularity relied upon and to enable the appellate courts to see that the alleged error was presented to the trial court for correction as required by Rule 36(a), T.R.A.P." *Id.* (quoting *Memphis Street Ry. v. Johnson*, 114

Tenn. 632, 88 S.W. 169, 171 (1905); *Ferguson v. State*, 166 Tenn. 308, 61 S.W.2d 467 (1933)).

■ In his motion for new trial, plaintiff failed to specify the portions of the jury instructions from which he complained. Therefore, we cannot consider the merit of plaintiff's fourth issue.

In his final challenge regarding the jury instructions, plaintiff alleges the court erred in refusing to instruct the jury on the availability of punitive damages. Because the jury denied the plaintiff any recovery and based upon our foregoing findings, we pretermit this issue.

## IV.

Plaintiff states his sixth issue as follows: "The trial court made prejudicial comments on the evidence." The comment plaintiff challenges arose during plaintiff's cross-examination of Mr. Kjellgren, president of Fleetline. The court's comment was made after defense counsel objected to plaintiff's counsel questioning Mr. Kjellgren regarding the contents of the personnel files of approximately twenty-five employees. Plaintiff's counsel handed Mr. Kjellgren twenty-five personnel files and asked him if the information shown on a list made by an employee of defendant corporation regarding lay offs at the time of plaintiff's discharge came from the personnel files. The questioning was as follows:

Q. Okay, sir. Now, all of the information that is included on this paper that you got came from these personnel files, correct?

A. I'm not sure. I didn't do this.

Q. Jennie Wilson did it?

A. Yes.

Q. You asked her to go to the personnel files and prepare this record, this document?

A. No, I didn't ask her.

Q. Who asked her?

A. The attorneys asked her.

Q. On your behalf since you're the defendant, correct?

A. Yes, yes.

Q. And she went to the personnel files and she compiled this document that you have and that information that's the same, correct?

A. Correct.

Q. All right. Let's start with the number one file you have on top there, which I believe is Robert W. Goostree, sir.

A. Yes.

....

Q. All right, sir, are the documents that I gave you in the same order that you took them out in?

A. Yes.

Q. Okay. Now, let me just make sure that we're together on Robert W. Goostree. You don't see any evidence in that personnel file there that indicates in any way that he was employed in 1991, do you, sir?

A. I don't—I've never seen these before and in all honesty with you, for me to determine that I'd be—I'd just be sitting here telling you something that I don't really know. I've never seen these files before. I know of a Robert Goostree that worked at our place. When he worked there, when he didn't, with a hundred-something employees it would be very hard for me to say that I could do that.

Q. Mr. Kjellgren, you can read, can't you, sir?

A. Yeah.

Q. And you can look through those documents, there's only four or five pages. I ask you just to look through them and see if there's anything in there that indicates that he was employed in 1991. If there is, please point it out.

A. I don't know where I'd even begin to look where he was employed in 1991. I see an employee withholding. Where does it tell me where he was hired in here? I mean, you're asking me that and I really don't know. I don't do this at my place of business. I've never seen these documents before.

Q. There's no evidence that you see in there indicating that he was hired prior to

the date you've already testified to in '92, is there?

A. I didn't testify to this date.

Q. You read it out of the file just a few minutes ago, didn't you, sir?

A. Read what out of a file?

Q. We'll move on. The next one I want you to look at is Robin Platt. That moves up just a little bit. Robin Platt— and you've indicated here that there is a layoff date of 2/1/91, sir.

MR. CURRY: If Your Honor please, I object to that, for him stating that this witness indicated. That document that he has was not created by this witness. It was created by the lady that he has under subpoena for this trial, and he can call her and ask her about that list if he wants to because she created it, not this witness. I object to that reference.

MR. JOHNSTON: Well, let's just back up just one minute. Maybe we can clear that part up.

Q. Mr. Kjellgren, you are the president of Fleetline Products, Inc., are you not, sir?

A. Yes.

Q. And you are also the sole owner of Fleetline Products, Inc., aren't you, sir?

A. My wife and I.

Q. And your wife is an officer.

A. Yes.

Q. And you're an officer and Ms. Jennie Wilson is also an officer, correct, sir?

A. Yes.

Q. And on behalf of Fleetline, whoever made it up on behalf of Fleetline, that document, the list of the 25 employees allegedly laid off, was created for Fleetline, right?

A. Yes.

Q. Okay. Now, Fleetline has indicated on the document that you—that Fleetline created that Robin Platt was laid off on 2/1/91. Let me ask you to go through that file there, it's not very many pages, and I'll ask you to pull out the document that indicates that she was laid off on 2/1/91, please, sir.

A. I have no idea where to pull it from. I have no idea where she was laid off at and if you'll show me I'll be glad to pull it.

Q. Well, let me give you a hint, sir. There is no document in there.

A. Okay.

Q. There's none there.

A. Then I can't really pull it, can I?

Q. No, sir, you cannot.

MR. CURRY: If Your Honor please, I object to counsel testifying. I object to counsel testifying. He's taking a document that this witness is not familiar with, he's taking a document that this witness didn't create, and look what he's doing. That's argument. He's writing on that board there. He's testifying. I object.

MR. JOHNSTON: The jury can see these documents for themselves and they can determine—

MR. CURRY: They certainly can, but counsel can't testify, if Your Honor please, and I object. And I'd like this stopped right now. He's going to do that with every one of these documents. This is a mockery. The witness has said he doesn't know what's in these documents and he didn't produce that one, and he's having a field day up there with him.

THE WITNESS: Peter, she made this from the time cards. They weren't here. They could have not been laid off but they weren't here. So that's where it came from.

MR. CURRY: Hold on. We're trying to clear this up, Mr. Kjellgren. This is just— it's a mockery of the fact-finding process, Your Honor, for him to be able to take personnel files that the witness doesn't have the faintest idea what's in there and a list that was created by Jennie Wilson, who he has under subpoena and is familiar with these documents, to be doing that to this witness, if Your Honor please.

MR. JOHNSTON: May it please the Court, these documents are simple, straightforward, they're in English. Any third grader could go through there and find a document that indicates that they were laid off—

THE COURT: What is your point? What point are you trying to make, that this list is wrong?

MR. JOHNSTON: That's exactly what—

THE COURT: Is that what you're trying to show?

MR. JOHNSTON: That's exactly what I'm showing.

THE COURT: That the list of who was laid off was wrong. What does it have to do with age discrimination?

MR. JOHNSTON: They have alleged that this is a non-discriminatory reason for Mr. Loeffler's firing, that there was this downturn in business and he was laid off in the general downturn in business, and as evidence of this downturn in business, and apparently the only evidence, they have listed these 25 people who they say they laid off. And what I'm trying to do is point out—

THE COURT: That that's wrong.

MR. JOHNSTON: That's wrong.

THE COURT: All right. I don't think you're going at it in a very good way.

MR. JOHNSTON: Well, I don't know any other way to do it. I mean, they've produced these documents. They are Fleetline documents. They're not my documents.

THE COURT: He said he didn't produce it. The other witness did. Why don't you wait until she gets here and ask her about this list that she prepared?

█ Plaintiff objects to the court's comment: "I don't think you're going at it in a very good way." We agree with plaintiff that a trial judge must not allow any personal feelings to enter into the trial, must be careful not to give an expression to any thought, and must not imply what his opinion would be in favor of or against either party. *See Leighton v. Henderson,* 220 Tenn. 91, 94–95, 414 S.W.2d 419, 420 (1967). We further agree that this rule extends to comments made incident to ruling on an objection. *See Bass v. Barksdale,* 671 S.W.2d 476, 488 (Tenn.App.1984). However, in the present case the court's comment was neither an expression of the court's personal feelings

with regard to the case nor an expression of his opinion in favor of or against either party. The comment in question was not a comment on the evidence, but a response concerning a procedural matter regarding the attempt by plaintiff's counsel to prove facts which the witness on the stand explained were beyond his competence. As this court noted in *Bass:* "Comments which do not express an opinion as to the weight of the evidence normally do not constitute prejudicial error." *Bass,* 671 S.W.2d at 488. Accordingly, we find no error in the judge's comment.

Based on the foregoing, we affirm the decision of the trial court in all respects and remand the case for any further necessary proceedings. Costs on appeal are taxed against plaintiff/appellant.

TODD, P.J., and CANTRELL, J., concur.