IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 28, 2001 Session

# PATRICK B. REINSHAGEN, v. PHP COMPANIES, INC., d/b/a CARITEN HEALTH PLANS, CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY, d/b/a BARONESS ERLANGER HOSPITAL, and JANET SHOOK

**Direct Appeal from the Chancery Court for Hamilton County, Part I**
**No. 98-0405    Hon. W. Frank Brown, III, Chancellor**

**FILED NOVEMBER 14, 2001**

**No. E2001-00025-COA-R3-CV**

---

In this action for breach of employment contract and defamation, the Trial Court granted summary judgment to defendants. Plaintiff appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

John P. Konvalinka and J. Scott McDearman, Chattanooga, Tennessee, for Appellant, Patrick B. Reinshagen.

Dan D. Rhea, Knoxville, Tennessee, for Appellees, PHP Companies, Inc., and Janet Shook.

Carlos C. Smith, J. Robin Rogers, and Mark W. Smith, Chattanooga, Tennessee, for Appellee, Chattanooga-Hamilton County Hospital Authority.

**OPINION**

In this action for breach of employment contract and libel and slander, the Trial Judge granted defendant summary judgment. Plaintiff has appealed.

Plaintiff sued PHP Companies, Inc. d/b/a Cariten Health Plans ("Cariten"), Chattanooga-Hamilton County Hospital Authority d/b/a Baroness Erlanger Hospital ("Erlanger"),

and Janet Shook, and alleged that he was employed by Cariten in December of 1996 as a salesperson, and that Cariten was affiliated with Erlanger "in either a partnership or joint venture". He alleged he was provided an employment contract, which was breached, and that his co-workers undermined his efforts, i.e., Ms. Shook falsely accused him of unprofessional behavior, and published these false accusations to Cariten executives, all of which resulted in his termination.

Defendants essentially denied all of plaintiff's allegations (except that he had been terminated). Erlanger admitted that it owned stock in PHP, but otherwise denied or stated that it had no knowledge regarding plaintiff's allegations. The letter which plaintiff alleged created an employment contract was made a part of the record by Agreed Order. The letter is written on the letterhead of LifeForce Health Plans, Inc., and states that its purpose is to spell out the "basics" of plaintiff's relationship with Cariten Health Plans. The letter is dated December 16, 1996, and states plaintiff will be an employee of Cariten, in the division known as LifeForce. The letter further states that plaintiff would be responsible for selling "CompForce" products, and that plaintiff would report to the lead marketing person when one was in place. The letter states plaintiff's salary for the first year would be $42,000.00, and for the second year it would be $40,000.00, which would be reviewed annually thereafter. The letter further states that plaintiff would be paid incentive compensation for each new customer, as well as for the sale of "non workers' compensation clinical services", and that such incentive compensation would be paid quarterly. Cariten would retain the right to change the "arrangements" at any time. The letter was signed by John Barnes, Chief Operating Officer of LifeForce, the Chattanooga Division of Cariten Health Plans. The letter also bears the signature of the plaintiff.

In the exhibits to defendants' Motions for Summary Judgment, one exhibit was a statement signed by plaintiff, dated December 16, 1996, acknowledging receipt of the PHP employee handbook, which recites plaintiff understands that his employment is terminable at will and that there is no employment contract. The Acknowledgment also states that no contract other than "at-will" has been expressed or implied, and nothing will alter the at-will relationship.

Also filed was the Affidavit of Janet Shook, which states that she was Director of Commercial Business Development, and was plaintiff's supervisor. She stated that plaintiff's job was to sell workers' compensation claims management services, and that she wrote a "series of memoranda" to plaintiff criticizing various aspects of his job performance from September 30, 1997 to October 29, 1997, and that she gave copies of these to her supervisor, Lance Marshall, and the personnel manager. She further stated that she received a complaint in January of 1998 from Federated Insurance Company regarding the plaintiff, and that she and Mr. Marshall jointly recommended to PHP-Cariten's home office that the plaintiff be terminated. Lance Marshall's Affidavit states that he was the President of the Chattanooga Division of PHP-Cariten, and that plaintiff was terminated in January 1998 on his recommendation because of performance and work behavior issues. He also stated that PHP never received any revenue from the sale of "non workers' compensation clinical services." Erlanger, in its Motion, attached depositions of its officials, which explained the relationship between Erlanger and Cariten.

Plaintiff filed a Response to these Motions, including documents and excerpts from depositions.

The Trial Court, responding to the motions, issued a Memorandum Opinion finding that plaintiff was an employee of PHP, which had been asserted by affiants Shook and Marshall. Further, the Court held that plaintiff had filed no affidavit in response, and since his complaint stated he was an employee of Cariten, he was estopped from taking an inconsistent position at that stage of the litigation. The Court then held that plaintiff was an employee, terminable at will, and granted defendants summary judgment.

Regarding the claim of unpaid commission, the Court denied summary judgment, finding that the defendants had failed to prove that no genuine issue of fact existed. The Court also sustained Shook's Motion for Summary Judgment, finding that Shook's statements were true, and further there was no publication because the statements were only communicated to Shook's superiors with the company. In so finding, the Court recognized that plaintiff had raised other instances of alleged defamation, but found that they had not been plead in the complaint, and further that the statements were also true.

Subsequently, plaintiff filed a Motion to Alter or Amend, or for Interlocutory Appeal, and attached an Affidavit which states that Barnes told him he was an Erlanger employee even though the documents said Cariten, and further that the documents plaintiff signed were supposed to be for insurance purposes only. He also attached an affidavit of Michael Mahn, which states that he had been the vice president of Erlanger during the time plaintiff was hired by Erlanger to sell Erlanger products through an Erlanger-controlled company called LifeForce. Mahn stated that Erlanger had a 90% equity interest in Cariten, and that plaintiff was always professional and courteous in his job.

Erlanger filed a Motion to Strike the affidavits, and attached excerpts from plaintiff's deposition which contradicted plaintiff's affidavit, i.e., plaintiff had testified in his deposition that he was an employee of Cariten, and was never employed by Erlanger.

The Trial Court then entered a Memorandum Opinion and Order reaffirming its prior decision, and making the grant of the partial summary judgment a final order, pursuant to Tenn. R. Civ. P. Rule 54.02. The Court, in denying the Motion to Strike the affidavits, determined that they were not part of the Court's record. Plaintiff thereafter filed the affidavits, and filed a Notice of Appeal. Approximately one month after plaintiff filed his Notice of Appeal, the Court entered a Memorandum Opinion (but not an Order) discussing the then recent Supreme Court opinion of *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000), and stating that the opinion would not change the result reached by the court.

At the outset, we are required to determine whether the affidavits attached to plaintiff's Motion to Alter or Reconsider were properly before the Trial Court. Local Rule 7.01 of the Hamilton County Chancery Court states that documents which are "lodged, such as briefs, are

stamped "Received" and are placed in the court file but do not become part of the record." The brief to which these affidavits were attached is stamped "lodged."

We believe the Supreme Court's opinion in *Harris* controls whether the evidence contained in the affidavits should have been considered by the Trial Court.

In *Harris*, the Supreme Court was asked to determine the standard to be applied when ruling on a Tenn. R. Civ. P. Rule 54.02 motion to amend a grant of partial summary judgment, based upon evidence other than that which the court had before it when the summary judgment was granted. The *Harris* Court adopted a test which asked the court to consider the following factors:

1)    the movant's efforts to obtain evidence to respond to the motion for summary judgment;
2)    the importance of the newly submitted evidence to the movant's case;
3)    the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment;
4)    the likelihood that the nonmoving party will suffer unfair prejudice; and
5)    any other relevant factor.

Thus, the Court ruled the evidence did not have to be "newly discovered" as had been required in the past. *Id*. The Court also stated that the standard of review of a trial court's ruling on these issues was an abuse of discretion standard.

Under this standard, we believe the Trial Court was correct in refusing to alter its grant of partial summary judgment. Plaintiff had responded to the summary judgment motions filed by the defendants by attaching some deposition excerpts and other documents as evidence in support of his response, but did not file any affidavits with his response. Also, he has not provided any explanation of the efforts he made in order to obtain the evidence needed to respond to the summary judgment motion, nor does he explain why he did not offer the newly submitted information in his initial response. Obviously, the plaintiff could have filed his own affidavit at any time, and he did not show that Mahn was unavailable to give his affidavit previously. These affidavits raise facts which could have and should have been provided earlier, and attempt to create new factual issues in order to avoid summary judgment. We hold that the Trial Court did not abuse its discretion in failing to alter its previous partial summary judgment based upon the late-tendered affidavits.

The parties moving for a summary judgment have the burden of establishing there is no genuine issue of material fact, and that they are entitled to a judgment as a matter of law. *Byrd v. Hall,* 847 S.W.2d 208, 211(Tenn. 1993). This may be accomplished by either negating a critical element of the other party's case, or by establishing an affirmative defense. *Id.* The burden then shifts to the non-moving party to show there is a genuine issue of material fact for trial, by affidavit or otherwise. *Id*. Tenn. R. Civ. P. Rule 56.

-4-

Our review of the evidence submitted on the Summary Judgment Motions reveals there is arguably some dispute as to who employed plaintiff, whether it be Erlanger, Cariten, or some combination of the two. The issue thus becomes whether this disputed fact, is material. In determining whether disputed facts are material, the Supreme Court has mandated that "the court must examine the elements of the claim or defense at issue in the motion to determine whether the resolution of that fact will effect the disposition of any of those claims or defenses." *Byrd* at 215 (Tenn. 1993). Plaintiff claimed that his termination constituted a breach of the employment contract he had with defendants. The defendants claim that there was no employment contract. Thus, the issue of which defendant was actually plaintiff's employer is not material to the ultimate issue, i.e. whether the plaintiff had an employment contract which was breached, or whether his employment was terminable at will. This issue, is not an issue of fact, but rather a question of law.[1]

In this jurisdiction, there is a presumption that an employment relationship is at will, unless proven otherwise. *Rose v. Tipton County*, 953 S.W.2d 690 (Tenn. Ct. App. 1997). In order to show there is an employment contract, the employer must use specific language which guarantees employment for a definite term. *Loeffler v. Kjellgren*, 884 S.W.2d 463 (Tenn. Ct. App. 1994). This Court has previously said that "an enforceable contract must result from a meeting of the minds of the parties and must be sufficiently definite to be enforced." *Id.* at 468.

In *Loeffler,* we found that a letter similar to the one relied upon by plaintiff, did not create an employment contract. In that case, the letter stated:

> This letter will confirm my interest in employing your services to establish and run a plastic company (splash guards).
> As you requested, I have outlined your expectations for compensation:
>  1) First year salary                    $45,000.00
> 2) Second year salary                $50,000.00
>  3) Participation in group insurance plan provided by Fleetline.
>  4) Reimbursement for relocation to Tennessee.
> 5) After working for four (4) years, you will be provided a $25,000.00 per year for four (4) years for consulting fees.

Thanking you, in advance, and hoping to hear from you in the very near future, I remain,

Yours very truly,
Fred M. Kjellgren
President

This Court stated that the "letter simply set forth what plaintiff could expect to earn

---

[1] The letter which plaintiff relies upon to create an employment contract speaks for itself, and there is no dispute that this letter was signed by the plaintiff, or that there is no dispute of fact as to the contents of the letter itself.

by way of compensation if he continued to work for Fleetline; there is no guarantee of employment for a definite term." *Id.*

Similarly, in this case, the letter which plaintiff relies upon simply sets forth his salary for the first year, and that it would be reduced in the second year, and outlines other benefits. The letter does not contain specific and definite language such as to create an enforceable contract for a definite term. Moreover, the acknowledgment signed by the plaintiff contemporaneously with the letter he relies upon clearly states that plaintiff's employment was at will. Since plaintiff's employment was at will, he could be terminated at any time by any party for any cause or no cause, and we affirm the Trial Judge's holding on this issue.

Plaintiff also takes issue with the Trial Court's grant of summary judgment on his defamation claims, arguing that there was publication, and that the statements were not true.

The only facts pertaining to this issue which the court had before it when making its determination on summary judgment were those contained in the Affidavit of Ms. Shook, the memos from Ms. Shook regarding plaintiff's performance and other job issues, and the transcript of the telephone call Ms. Shook and Mr. Marshall made to Bill Wilder.[2] This evidence establishes that the only statements Ms. Shook made to anyone outside PHP were those made to Bill Wilder in a telephone call regarding the videotape interview. The dissemination of job performance reviews to supervisors is not publication for purposes of defamation. *See Woods v. Helmi*, 758 S.W.2d 219 (Tenn. Ct. App. 1988).

In that phone call, Ms. Shook told Mr. Wilder that if plaintiff made the anonymous phone call to Wilder, he was acting totally inappropriately, and when Wilder suggested that they confront plaintiff about it, Ms. Shook replied that she did not think plaintiff would admit it. There is no dispute regarding these facts. Further, a communication is capable of conveying a defamatory meaning is a question of law. However, a review of the Trial Court's determination of this is *de novo*. *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App.1996).

Ms. Shook's statement that plaintiff acted inappropriately if he made the complaining phone call to Wilder was not defamatory, because it was true. The record establishes that plaintiff signed a confidentiality agreement with PHP when he was hired, and in that agreement, which is quite broadly written, plaintiff agreed to hold any information regarding PHP in confidence. Thus, plaintiff's act of calling Wilder and discussing information pertaining to PHP operations in any way would violate his agreement, and could be viewed as inappropriate behavior. The Trial Court's ruling that this statement was true is correct.

Ms. Shook's statement regarding whether plaintiff would tell the truth if confronted

---

[2]Wilder was employed by Huffacre & Associates, an independent insurance agency, who served as an intermediary between PHP-Cariten and its potential clients.

is also not defamatory because it is clearly a statement of Ms. Shook's opinion, and not expressed as a fact. This statement is similar to the one made in *Revis*, wherein this Court made clear that mere statements of opinion, with nothing more, cannot constitute slander. As *Revis* notes, such opinion statements do not "seriously threaten" the plaintiff's reputation or "hold him up to public hatred, contempt, or ridicule." There are no other issues of alleged defamatory statements in the record as it existed prior to the Trial Court's making its decision on granting summary judgment. We hold that the plaintiff failed to make a prima facie showing of defamation in this case, and defendants were entitled to summary judgment as a matter of law.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Patrick Reinshagen.

_____
HERSCHEL PICKENS FRANKS, J.