Nancy BRINGLE, Plaintiff-Appellant,

v.

METHODIST HOSPITAL and Charlotte Smith, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 17, 1985.

Application for Permission to Appeal Denied Nov. 25, 1985.

---

Stanley J. Kline, Memphis, for plaintiff-appellant.

David P. Jaqua, Memphis, for defendants-appellees.

CRAWFORD, Judge.

Plaintiff, Nancy Bringle, appeals from the order of the trial court granting summary judgment to defendants, Methodist Hospital and Charlotte Smith.

Plaintiff's complaint alleges that she was hired by defendant Methodist Hospital in June, 1980, and that after several promotions she held the position of bed assignment coordinator under the supervision of defendant Charlotte Smith. The complaint also alleges that at the time she was employed she was furnished a copy of the Methodist Hospital Employee Handbook containing written agreements entitled "Employee Relations Code," "Employees Conduct," "Employee Discipline," "Termination of Employment," "Appeal Process," and "Promotion, Demotions and Transfers," and that the provisions of the handbook formed a contract between plaintiff and defendant, Methodist Hospital. The complaint further alleges that on or about May 18, 1983, defendant Smith told plaintiff that she could either resign or face immediate discharge. In return for her resignation, plaintiff allegedly was to be given an equal position in another department at the hospital. After resigning, she attempted to secure new employment with the hospital, but on June 17, 1983 was advised by the employment office director to seek employment elsewhere. Plaintiff avers: that she was deceived by Charlotte Smith as to her rights; that the defendants breached the contract of employment, since they had no cause or legal right to terminate her employment; and that the defendants' intentional, wrongful actions constitute outrageous conduct.

In response to the complaint, defendants filed a motion to dismiss and a motion for summary judgment pursuant to Tenn.R. Civ.P. 12.02(6) and 56 respectively, an answer and counter-claim, and a subsequent motion for summary judgment. The trial court granted defendants' motion for summary judgment on all of plaintiff's claims.

In ruling on a motion for summary judgment the trial court and Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

The facts are virtually undisputed and for the most part, are derived from plain-

tiff's deposition testimony. Briefly the dispositive facts viewed in the light most favorable to the plaintiff reveal that at the time plaintiff was hired she was furnished an employee handbook that set forth various hospital policies, benefits, rules, regulations and grievance procedures. During the course of her employment updated handbooks were furnished to replace the one originally furnished, but all of the handbooks contained general procedures for grievances and the rights of, and benefits to, the employees. None of the handbooks gave the employees any assurance of employment for any definite time. The handbook initially furnished to plaintiff contained the following statement:

The Hospital recognizes its right and obligation to operate and manage its facilities. From time to time decisions considered to be in the best interest of the institution, its patients and employees, must be made without prior consultations with its employees.

Therefore, the Hospital must maintain exclusive discretion to exercise the customary function of management including, but not limited to, the right to hire, discharge, promote, suspend, supervise and discipline, and assign work schedules. Also included is the right to change and abolish policies, procedures, rules and regulations, to determine and modify job descriptions, wages and job classifications and the assignment of duties considered to be in the best interest of our patients.

Plaintiff was promoted several times after her initial employment and at the time of her resignation was working as a bed assignment coordinator under the supervision of defendant Smith, the admissions director. During the time the plaintiff worked in the admissions department, there were several complaints concerning her performance and she had been counseled by her supervisors on several previous occasions. On May 18, 1983, she was advised by defendant Smith that she was to be terminated *unless she resigned* her position in that department immediately. Smith told her that if she resigned she would remain on the hospital payroll until June 24, 1983 and would be recommended for employment in some other department of Methodist Hospital.

Following her resignation, plaintiff consulted the personnel director of Methodist Hospital and we quote from plaintiff's deposition concerning a part of this conversation:

Q. What was said during that meeting?

A. Again I was very very upset about the previous day's happenings and I explained to Kathy what had happened and that I felt that I could not be without a job, that the whole thing had upset me so badly that the thoughts of being without a job were overwhelming, and she gave me two options. She said that I could do one of two things, that I could appeal what had happened with Charlotte, in other words, I could go over Charlotte's head and try to get my job back, or I could go through the employment office and find another job in the hospital, and she suggested that since I was so upset and so distraught about this that I take the weekend to think about it, and she gave me until the following Monday, which was May the 23rd to make a decision about what I wanted to do.

Q. What did you say during this meeting with Kathy Sullivant on the 19th?

A. I just explained to her the events of the previous day.

Q. What did you say in response to her two options that she gave you?

A. I don't recall.

Q. Okay, did you contact Kathy Sullivant on May 23rd?

A. Yes, I did.

Q. Contact her by telephone?

A. Yes, I did.

Q. And what was said during that conversation?

A. I told her that I had discussed the situation with family and friends, and I had decided to pursue another job within the hospital.

Q. And what did Ms. Sullivant say?

A. She made an appointment with me with Robert Carter in the employment office.

On several occasions plaintiff checked with the employment office but never applied for any of the jobs posted because she felt they were not suitable for her. On June 17, 1983, plaintiff, through her counsel, withdrew her previous resignation. On June 24, 1983, plaintiff's employment with Methodist Hospital was terminated.

Plaintiff has presented four issues for review but we perceive the only real issue to be whether the trial court erred in granting the defendants a summary judgment.

Plaintiff asserts that she had a contract of employment with the hospital by virtue of the employment handbook and that she could not be discharged by the hospital without cause. She also asserts that the hospital and Smith procured her resignation by misrepresenting that she would have another job. She further asserts that the defendants were guilty of the tort of outrageous conduct because of her wrongful discharge. Defendants contend that the plaintiff was an employee at will and could be discharged without cause at any time.

■ It is clear that the employee handbooks did not create any employment contract for a definite term. Even if it was conceded that the handbooks established an employment contract, the contract would be for an indefinite term. Plaintiff has never contended that she was hired for any definite term and there is no dispute as to any material fact in regard to the term of employment. The law is well established in this state that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. *Graves v. Anchor Wire Corporation of Tennessee,* 692 S.W.2d 420 (Tenn.App.1985).

■ We turn now to plaintiff's allegations of misrepresentation and outrageous conduct. Although plaintiff could have been terminated initially, she was given the right to resign and seek other employment in another department of the hospital. Plaintiff also received additional pay and benefits which she ordinarily would not be entitled to upon termination. She was advised of her rights to appeal the action of Smith in obtaining her resignation, but chose to apply for other employment with the hospital. When the other employment did not materialize she rescinded her resignation although she now insists she has a cause of action against Smith and the hospital arising from her resignation. The record does not support actionable misrepresentation on the part of defendants.

■ The record before us is clear that plaintiff was an employee at will, i.e., that her employment was terminable by the hospital at any time without cause. We fail to see how defendants' conduct in allowing plaintiff to resign and secure additional benefits as an alternative to discharge by the hospital can amount to outrageous conduct. In order to constitute outrageous conduct under our law the conduct of the defendants has to (1) be so outrageous in character and so extreme in degree as to be beyond the pale of decency and regarded as atrocious and utterly intolerable in a civilized society, and (2) result in serious mental injury. *See Swallows v. Western Electric Company, Inc.,* 543 S.W.2d 581 (Tenn. 1976). We find no such conduct in the record in this case.

The judgment of the trial court is affirmed and costs are assessed against appellant.

NEARN, P.J., and HIGHERS, J., concur.