**Pamela Sue HOOKS, Plaintiff–Appellant,**

**v.**

**Bobby GIBSON, et al., Defendants–Appellees.**

**George Michael HOOKS, Plaintiff–Appellant,**

**v.**

**Bobby GIBSON, et al., Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

July 16, 1992.

Permission to Appeal Denied by Supreme Court Nov. 30, 1992.

Dorothy B. Stulberg, Stacy A. Hickox, Oak Ridge, for plaintiffs/appellants.

Joe R. Judkins, Wartburg, for defendants/appellees.

## OPINION

FRANKS, Judge.

Plaintiffs, Dispatcher–Jailor and a Deputy Sheriff, who were summarily discharged by defendant Sheriff, sought reinstatement to their positions on the basis they were terminated in violation of a policies and procedures manual governing their employment. Following an evidentiary hearing, the Trial Court found the "policies and procedures manual did not become a part of the contract of employment between the plaintiffs and the defendant". His analysis was:

> "The Policy And Procedures Manual does not contain any reference that the policies and procedures contained in the manual are guarantees to the employees. The forward to the Policy And Procedures Manual indicates in the first paragraph that the 'rules and regulations are prescribed and, except under circumstances or in situations where it is the best interest of the Department to do otherwise, shall govern the administration of the Department and the conduct of members'. In the second paragraph of the forward it is indicated that 'these rules and regulations are intended for the guidance of members of the Department'."

Our reading of the entire manual, coupled with the other evidence does not merit this conclusion. We reverse.

Defendant Sheriff was elected to office in 1986 and set about getting the county jail "state certified". He testified that as a part of certification he was required to promulgate a policies and procedures manual. In this regard *see* Tennessee Code Annotated § 41–4–140. He obtained a copy of Anderson County's policy and procedures manual and essentially retyped it, substituting "Morgan County". The state approved the manual, and certified the facility. Due to the certification the county receives in excess of $100,000.00 a year for incarcerating prisoners.

The Sheriff testified he did not read the manual and did not consider it a contract between the Sheriff's department and its employees. He was asked:

> "Q. What did you consider it to be?
> A. Guidelines, rules and regulations for them to go by."

The employees were furnished copies of the manual, and were required to acknowledge in writing that they had received a copy. *See Mobile Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985); *Domingo v. Copeland Lumber Yards,* 81 Or.App. 52, 724 P.2d 841 (1986) (holding manuals issued after employment became part of the employment contract.)

The manual provides under "Mission Statement":

> "The Morgan County Correctional Center will provide policies and procedures which reinforce the skills and safety of the staff ... [and] the jail will strive to meet all state standards for state certification, utilizing all available community resources maintaining good relations with the press, public, and all agencies utilizing the facility."

Under "Terms And Conditions Of Employment" it is provided:

> "Probationary Period—All new employees are considered probationary for the first six months. At the end of this period, work performance will be reviewed by the facility Sheriff, and he will

determine if the employee's work has been satisfactory, the employee will be retained as a permanent employee. If the employee's work has not been satisfactory, the employee will be terminated, or special conditions of employment initiated."

The manual further provides that all persons employed by the Morgan County Sheriff's office will perform their assignments in compliance with the Policies and Procedures Manual, and are responsible for maintaining a "current" manual. The manual sets forth numerous grounds for disciplinary action and enumerates categories of discipline, i.e., "written reprimands, suspension, dismissal". The manual provides under dismissal:

"The Sheriff may dismiss an employee for just cause, provided any disciplinary action taken by the Sheriff can be supported by evidence strong enough to bear the burden of proof of just cause for such disciplinary action.

The employee must be advised in writing of his appeal rights and the procedure to follow if he desires to appeal.

Any employee who has or may be disciplined is entitled to a prompt hearing (within 7 calendar days) by the Sheriff or his Chief Deputy, unless the employee specifically waives it in writing.

The purpose of said hearing is to ensure that the employee's side of the incident is fully presented. The Sheriff will furnish a copy of the charges to the employee prior to the above-mentioned hearing."

Notwithstanding the Sheriff's refusal to abide by the Policies and Procedures Manual, he promulgated the manual and obtained the State's approval for its use, and as consideration receives substantial monies from the State so long as he meets the State's requirements. Defendant will not be heard to say he never read the manual or didn't agree to be bound by it. We conclude that plaintiffs are third-party beneficiaries of the agreement between the State and defendant. The Policies and Procedures Manual thus became a part of their contract of employment.

In *Abraham v. Knoxville Family Television,* 757 S.W.2d 8 (Tenn.App.1988), we said:

"In the case of *Willard v. Claborn,* 220 Tenn. 501, 419 S.W.2d 168 (1967) our Supreme Court, in addressing the right of third-party beneficiaries of contracts to sue on the contract, said:

'In Tennessee the doctrine is firmly established that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party.'

*Id.* 419 S.W.2d at 169.

In contracts there are essentially three types of third-party beneficiaries. First, where the performance of the promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promisee to the beneficiary; the beneficiary is a creditor beneficiary. Third, in all other cases a beneficiary is deemed to be an incidental beneficiary. *See* Restatement of Contracts, § 133. *Id.* [419 S.W.2d] at 170."

The State's requirement that the Sheriff promulgate a Policies and Procedures Manual was designed to ensure the development of a skilled and dependable staff which inures to the benefit of his employees, and falls within the ambit of the third-party beneficiary rule for maintaining an action as beneficiary.

■ While the Policies and Procedures Manual does not create a term of employment, it repeatedly sets forth the procedures for terminating employees. The mere fact that the plaintiffs' employment was for an indefinite term is not determinative. In *Williams v. Maremont Corp.,* 776 S.W.2d 78 (Tenn.App.1988) p. 80, we explained:

"The parties do not dispute that Maremont employed all the Plaintiffs for in-

definite terms. As a general rule '[t]he law is well established in this state that a contract for employment for an *indefinite* term is a contract at will and can be terminated by either part[y] at any time without cause.' *Graves v. Anchor Wire Corporation of Tennessee*, 692 S.W.2d 420, 422 (Tenn.App.1985), *perm. app. denied*, 692 S.W.2d 420 (Tenn.1985) citing with approval *Whitaker v. Care–More, Inc.*, 621 S.W.2d 395 (Tenn.App.1981) (emphasis in original). The mere lack of a definite durational term, however, does not prohibit the existence of other terms to the contract. For instance, parties typically agree on other terms of employment, such as wages and hours, without regard to the lack of a specific durational term.

In *Hamby v. Genesco, Inc.* [627 S.W.2d 373 (Tenn.App.1981)], this Court found that an employee handbook had become part of the contract of employment between the employees and the company and, in so doing, we said:

> The employer-employee relationship is contractual in nature. 53 Am.Jur.2d *Master and Servant* § 14 (1970). *See also, Seals v. Zollo*, 205 Tenn. 463, 327 S.W.2d 41 (1959). The employer-employee relationship is the product of an agreement or series of agreements between the employer and employee, including, but not limited to, the nature of the work to be performed, the duration of the employment and the terms and conditions of the employment."

*Accord: Preston v. Claridge Hotel and Casino Ltd.*, 231 N.J.Super. 81, 555 A.2d 12 (1989).

 The terms of the Policy and Procedures Manual as to discipline are clear and unambiguous, and we are required to enforce contracts according to their terms. It is a general rule that summary removal

is not available if there are express or implied restrictions on the manner of removal. *See* 56 *Am.Jur.2d* Municipal Corporations § 333, p. 364. Moreover, all parties to contracts are held to the duty of good faith and fair dealing, which is also applicable to employment contracts. *See Crenshaw v. Bozeman Deaconess Hospital*, 213 Mont. 488, 693 P.2d 487 (1984).

Our holding that plaintiffs' employment for an indefinite term does not deprive them of the benefit of the grievance procedures set forth in the Policy and Procedures Manual is widely supported by case law from other jurisdictions. *See e.g., Hoffman–Laroche, Inc. v. Campbell*, 512 So.2d 725 (Ala.1987); *Jeffers v. Bishop Clarkson Memorial Hospital*, 222 Neb. 829, 387 N.W.2d 692 (1986); *Arnold v. B.J. Titan Services Co.*, 783 P.2d 541 (Utah 1989); *Lewis v. Equitable Life Assurance Soc.*, 389 N.W.2d 876 (Minn.1986).

Defendant was required to follow the established procedures for the discipline and termination of plaintiffs, as he admitted the manual "was for them to obey." Defendant also conceded he did not follow the manual's procedure for termination.[1]

Accordingly, the Trial Court's Judgment is reversed, and the cause is remanded for the entry of an order reinstating the employees and for a further hearing on the issue of damages for loss of wages. The costs of appeal are assessed to appellee.

SANDERS, P.J. (E.S.), and GODDARD, J., concur.

---

1. The record clearly establishes the Defendant *did not follow the procedures, but his answer to* the posited question is illuminating:

 Q. "And you did not intend to follow those as it relates to termination of employees?"

 A. "I'm not saying I didn't—you know, I might look at them and consider them, but I'm not saying."