IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

February 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

GINA CHANDLER ALEXANDER,    ) C/A NO. 03A01-9804-CH-00125
    )
    Plaintiff-Appellant,    )
    )
    )
    )
v.    ) APPEAL AS OF RIGHT FROM THE
    ) ROANE COUNTY CHANCERY COURT
    )
SANDPIPER PROPERTIES, INC. and    )
JOSEPH R. ALEXANDER,    )
WILLIAM R. SCANDLYN and    )
FREDERICK D. HARVEY, as Directors    )
of Sandpiper Properties, Inc.    )
    ) HONORABLE FRANK V. WILLIAMS, III
    Defendants-Appellees.    ) CHANCELLOR

For Appellant

CHARLES B. HILL, II
Kingston, Tennessee

For Appellee

CHARLES M. FINN
Kramer, Rayson, Leake,
  Rodgers & Morgan
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED    Susano, J.

The plaintiff, Gina Chandler Alexander, seeks damages for breach of an employment contract. The trial court granted the defendants summary judgment and dismissed the plaintiff's suit. Plaintiff appeals, contending that there are genuine issues of material fact that render summary judgment inappropriate. We affirm.

I.

In 1990, the plaintiff and her husband, the defendant Joseph R. Alexander ("Mr. Alexander"), incorporated Sandpiper Properties, Inc. ("Sandpiper") for the purpose of developing a residential lakefront community known as Swan Harbour in Roane County. Sandpiper prepared and issued to potential shareholders a document entitled "Investment Brief," which described the development and set forth various and sundry information regarding the project.

As a part of the development, the Alexanders formed a limited partnership, Swan Harbour, L.P. ("the partnership"), with Sandpiper as the general partner. The partnership was formed to raise money for the development through the sale of limited partnership units. A "Private Placement Memorandum" was prepared in connection with the sale of the units. Both the Investment Brief and the Private Placement Memorandum made reference to the fact that the partnership would pay Sandpiper a monthly management fee of $6,000 plus 3.5% of the partnership's net income. Payment of the monthly management fee was to commence as

2

soon as a certain level of investment had been secured through the sale of the limited partnership units.

In April, 1994, the partnership secured the necessary funding and began paying the monthly management fee to Sandpiper, which in turn paid the fee to the management team composed of the plaintiff and Mr. Alexander.

The plaintiff and Mr. Alexander were divorced in December, 1994. Mr. Alexander subsequently lost interest in the project and resigned from the Sandpiper management team; however, he continued to own approximately 37% of the corporation's common stock.

In 1997, the Board of Directors of Sandpiper voted to terminate the plaintiff's employment. The plaintiff responded by filing this suit[1] against the corporation and its officers and directors. She alleges that she had an employment contract with Sandpiper by virtue of the documents published in connection with the efforts of Sandpiper and the partnership to secure investors for the development. She contends that her firing was a breach of that employment contract.

The defendants filed a motion for summary judgment. Their supporting material reflects that the plaintiff did not

---

[1]The plaintiff's complaint includes a shareholder's derivative action against Sandpiper and its new Board of Directors under T.C.A. § 48-17-401. The trial court granted the defendants' motion to dismiss as a matter of law for failure to state a claim upon which relief could be granted. This matter is not before us on this appeal.

have an employment contract for a definite term, but was, instead, an at-will employee.

The plaintiff filed her affidavit, in which she contends that the Investment Brief contains the following statement:

> An expected provision of Partnership, or other funding entity formed,[2] is a monthly management fee of Six Thousand ($6,000.00) Dollars plus an amount equal to 3.5% of Net Income for that period to be paid to the Corporation for compensation of two of the Founders, J. R. and Gina C. Alexander. This fee is for management and administrative services and for the use of trade secrets agreements, and proprietary information used in managing the Sandpiper projects. The management fee shall be payable beginning on the date the partnership minimum offering level is attained, or in accordance with the alternate funding plan if so chosen, and *will continue until the Sandpiper project is essentially completed.*

(Emphasis added.) The plaintiff contends that this language makes out a genuine issue of material fact on the question of whether the plaintiff had an employment contract for a definite term.

## II.

Our standard of review of a grant of summary judgment is well-settled. Our inquiry involves only a question of law, with no presumption of correctness as to the trial court's

---

[2]This is obviously a reference to the later-formed limited partnership of Swan Harbour, L.P.

4

decision. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *McCarley v. West Quality Food Service*, 948 S.W.2d 477 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Hardesty v. Service Merchandise Co., Inc.*, 953 S.W.2d 678, 684 (Tenn.App. 1997). The moving party has the initial burden of producing competent, material evidence reflecting that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. *Byrd*, 847 S.W.2d at 211. This burden may be met by affirmatively negating an essential element of the nonmoving party's claim or by conclusively establishing an affirmative defense. *Id*. at 215 n.5.

If the moving party successfully carries its burden, the burden then shifts to the nonmoving party to establish that there are disputed material facts creating at least one genuine issue that must be resolved by a trier of fact. *Id*. at 215. The nonmoving party may contradict the factual predicate of the summary judgment motion by presenting competent and admissible evidence by way of affidavits or discovery materials. Rule 56.06 Tenn.R.Civ.P.; *Robinson*, 952 S.W.2d at 426 n.4; *McCarley*, 948 S.W.2d at 479; *Byrd*, 847 S.W.2d at 215 n.6.

In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. *Byrd*, 847 S.W.2d at 210-11. Summary judgment is appropriate only when there are no genuine issues of

5

material fact and when the undisputed material facts entitle the moving party to a judgment as a matter of law. Rule 56.04, Tenn.R.Civ.P.; **Byrd**, 847 S.W.2d at 211.

III.

In this case, the material filed by the defendants in support of their motion for summary judgment demonstrates that the plaintiff was an at-will employee. As such, her employment was subject to termination with or without cause. *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Bennett v. Steiner-Liff and Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992); *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn.App. 1994); *Brock v. Provident Life and Accident Ins. Co.*, C/A No. 03A01-9509-CV-00297, 1996 WL 134943 at *4 (Tenn.App., E.S., filed March 27, 1996).

The defendants' motion for summary judgment was "properly supported." *Byrd*, 847 S.W.2d at 215. By demonstrating that the plaintiff's employment was at-will, the motion negated an essential element of the plaintiff's claim; specifically, it negated the plaintiff's allegation that her employment was covered by an employment contract for a definite term. Therefore, the burden on the motion shifted to the plaintiff -- the nonmoving party-- to establish the existence of "a genuine issue of material fact for trial." *Byrd*, 847 S.W.2d at 211. The plaintiff could have met this burden by submitting affidavits and/or discovery material that set forth "such facts as would be admissible in evidence...." Rule 56.06, Tenn.R.Civ.P.; *See Robinson*, 952 S.W.2d at 426 n.4; *McCarley*, 948 S.W.2d at 479; *Byrd*, 847 S.W.2d at 215 n.6.

7

In response to the defendants' motion, the plaintiff filed her affidavit, which specifically relies on the Investment Brief as evidence that a contract existed between her and Sandpiper. While a full copy of that document is not in the record certified to us, it does appear that it was attached to the defendants' summary judgment motion and considered by the trial court. The defendants urge us not to consider that portion of the affidavit which purports to quote from the Investment Brief. They correctly point out that the Investment Brief should be considered in its entirety, *cf*. **Aetna Casualty and Surety Co. v. Woods**, 565 S.W.2d 861, 864 (Tenn. 1978), something we cannot do because of the deficiency in the record. However, in view of the fact that the quoted language was the primary focus of the trial court's inquiry in deciding whether summary judgment was appropriate, we have decided to overlook the deficiency in the record. *See* Rule 2, T.R.A.P.

IV.

It is clear that employment for an *indefinite* term is employment at will. **Nelson Trabue, Inc. v. Professional Management - Automotive, Inc**., 589 S.W.2d 661, 663 (Tenn. 1979); **Hooks v. Gibson**, 842 S.W.2d 625, 628 (Tenn.App. 1992); **Bringle v. Methodist Hospital**, 701 S.W.2d 622, 625 (Tenn.App. 1985); **Graves v. Anchor Wire Corporation of Tennessee**, 692 S.W.2d 420, 422 (Tenn.App. 1985).

Assuming, for the purpose of discussion, that the quoted language from the Investment Brief is evidence of a

8

contract, we do not find that it is evidence of an employment contract for a definite term between the plaintiff and Sandpiper. It is true that the quoted language does provide the outer limit of the period during which the management fee is to be paid -- *i.e.*, "until the Sandpiper project is essentially completed." However, this language cannot reasonably be construed as a contract between the plaintiff and Sandpiper, committing the latter to an employment relationship with the former for a definite period of time. There are a number of reasons for this. First, if the Investment Brief is evidence of anything, it is some proof of a contractual relationship between the partnership and Sandpiper. While it refers to a payment "to [Sandpiper] for compensation of...J. R. and Gina C. Alexander," it does not directly address the terms and duration of the employment relationship between the plaintiff and Sandpiper. Second, even if this language could be construed as an employment contract between the plaintiff and Sandpiper, the period during which the management fee is to be paid is not expressly stated to be the same as the term of the employment relationship between the plaintiff and Sandpiper. Finally, the period of the payment is, in fact, *indefinite*. One cannot determine, from the language employed, the specific *date* on which the obligation to pay the fee terminates. This is because the date on which the "project is essentially completed" cannot be ascertained with certainty. Thus, the ending date of the management fee obligation is indefinite, *i.e.*, we do not know the specific calendar date when it will end.

9

We find that the plaintiff's affidavit, liberally construed in her favor, does not make out a genuine issue of material fact as to whether the plaintiff had an employment contract for a definite term.  Since the defendants' factual material establishes the lack of a definite-term employment contract, summary judgment was and is appropriate.

V.

The defendants seek damages for a frivolous appeal. This is not an appropriate case for such an award.  Accordingly, their motion for same is denied.

VI.

The judgment of the trial court is affirmed.  Costs on appeal are taxed against the appellant.  This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, J.

_____
Herschel P. Franks, J.