# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 29, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **KERRY THOMPSON,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Williamson Chancery No. 23619 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 01A01-9801-CH-00045 |
| **TELCO, INC.** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

APPEAL FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, CHANCELLOR

For the Defendant/Appellant:          For the Plaintiff/Appellee:

Alan Mark Turk                        Julie E. Officer
Brentwood, Tennessee                  Nashville, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

BEN H. CANTRELL, J.

WILLIAM C. KOCH, JR., J.

# OPINION

This case involves the alleged breach of an employment contract. The plaintiff employee argued that a letter signed by him and the defendant employer created a five-year employment contract. The trial court found that the letter was an agreement for employment for a five-year term, awarded the employee $62,235 for breach of contract, and required the employee to pay into court unemployment compensation benefits he received. The employer appeals. We reverse and remand.

Plaintiff/Appellee Kerry Thompson ("Thompson") started working for Defendant/Appellant Telco, Inc. ("Telco") on April 10, 1992 as a telephone repair technician. The parties executed a document entitled "Terms of Employment Agreement between Kerry Thompson and Telco, Inc." on that date, which read:

1)     Telco will pay Kerry Thompson $10.00 per hour.
2)     Kerry will be guaranteed a minimum $1.00 per hour raise per year over the next five (5) years.
3)     Two weeks paid vacation per year (July & December).
4)     Two bonuses per year of $600 each on June 6th and Dec. 12th.
5)     Telco agrees to pay insurance for Kerry Thompson. Kerry will pay his own dependent insurance.
6)     Weekly work hours will be 40 Hours. Minimum Telco will allow will be 5-10 hours overtime per week as soon as demand requires it.

The letter was signed by Thompson and by Gregory J. Wass ("Wass"). Wass was the manager of Telco's telephone repair center and Thompson's direct supervisor. Thompson worked for Telco until August 8, 1995. The termination letter from Telco dated August 9, 1995 states that Thompson was laid off "due to lack of work." Thompson received unemployment benefits of approximately $5684.

Thompson filed a lawsuit on October 11, 1995 alleging breach of the letter agreement. He sought lost wages and benefits allegedly due him under the agreement. Telco's answer admitted the authenticity of the letter agreement but denied that it constituted a five-year employment contract. Telco maintained that Thompson was an at-will employee and that the agreement merely guaranteed a rate of compensation if Thompson remained employed. Telco also raised several affirmative defenses, namely, that Thompson breached the agreement by failing to work forty hours a week and by failing to satisfactorily perform his duties, that the termination letter was a valid accord and satisfaction, that Thompson was estopped from filing suit, and the statute of frauds.

Both parties filed motions for summary judgment. Telco filed affidavits of the management personnel at Telco, as well as numerous employee records. Thompson also filed several affidavits, including his own. The trial court denied both motions.

The bench trial commenced on November 6, 1996. Thompson was the sole witness on November 6 and was questioned extensively by his counsel and opposing counsel. Thompson testified about his employment at Telco. He denied requesting that his termination be characterized as for "lack of work" so that he could receive unemployment benefits. He admitted, however, that by putting lack of work as the reason for his termination, Telco made him eligible for unemployment benefits. He also admitted that he received unemployment benefits. Although Thompson did not believe that he had done anything for which Telco could terminate him, he acknowledged that he was told that he was being terminated for the reasons listed on the termination report, including violations of the employee guidelines, unsatisfactory performance, and failure to work forty hours per week.

Thompson's counsel then closed his proof, after which counsel for Telco made a motion to dismiss the complaint. The trial court adjourned to consider the motion and read the parties' pre-trial briefs, which were not made part of the record on appeal.

At the beginning of the next day of trial, the trial judge *sua sponte* entered an order finding that, in agreeing on "lack of work" as a cause for termination, the parties "may have" violated Tennessee Code Annotated § 50-7-709, which sets forth a criminal penalty for a misrepresentation in order to receive unemployment compensation.[1] The trial court ordered the county district attorney to investigate the case. In addition, the trial court struck Telco's affirmative defense of accord and satisfaction regarding the termination letter because the defense was based on a fraudulent contract to obtain unemployment benefits and ordered Thompson to reimburse the Department of Employment Security for the amount of unemployment benefits he had received, plus interest, within thirty days. The order also provided that if Thompson failed to remit the monies

---

[1] Tennessee Code Annotated § 50-7-709 reads:

Misrepresentation to obtain benefits - Penalty.
(a) Whoever makes a false statement or representation knowing it to be false or knowingly fails to disclose a material fact, to obtain or increase any benefit or other payment under this chapter, either for himself or for any other person, commits a Class C misdemeanor; and each such false statement or representation or failure to disclose a material fact constitutes a separate offense.
(b) All prosecutions for offenses defined by this section shall be commenced within two (2) years, next, after the commission of the offense.

Tenn. Code Ann. § 50-7-709 (1991).

2

within thirty days, the trial court would dismiss the complaint. Court was then adjourned. There was no further testimony before court adjourned.

Based on circumstances unrelated to the employment compensation, Thompson's counsel filed a motion for extension of time for dismissal of Plaintiff's case with a supporting affidavit on December 18, 1996. On that same day Thompson's counsel filed a motion to alter or amend, arguing that Telco, not Thompson, prepared the termination letter and thus should be responsible for reimbursing the Department of Employment Security. The motion also requested permission for the funds to be paid to the clerk and master of the court until final disposition of the case. Telco filed a response to Thompson's motion, denying that it violated Tennessee Code Annotated § 50-7-709, and arguing that the statute does not provide that the employer must reimburse the State for unemployment benefits fraudulently received by the employee. The trial court denied Thompson's motion to alter or amend, but granted the motion for an extension.

In January, 1997, the trial court entered another order, noting that the Department of Employment Security would not accept the funds and allowing Thompson to pay the funds to the clerk and master of the court. After the funds were paid, trial was reset for November, 1997.

At trial, the parties disputed the effect of the April 10, 1992 letter. Telco argued that the letter created only an expectation of compensation, not guaranteed employment for a definite term. Thompson argued that the letter created an employment contract with a definite five-year term. In addition, the parties disputed whether Thompson requested Telco to state "lack of work" as the reason for his termination.

Thompson testified that he signed the April 10, 1992 agreement approximately one week after he accepted employment with Telco. He said that he wanted an employment agreement because he had been advised by someone who had previously worked for Telco that "they didn't stand behind what they said they was going to do." Thompson described his reasons for entering into the agreement:

> The main thing I wanted as far as the 40 hours, I wanted to be sure that I had time available. If I left my other job to come work for them, I didn't want them to all of a sudden say, well, we can only have you here for 20 hours a week. I wanted to be guaranteed that that 40 would be there available for me, and some overtime.

Under the terms of the agreement, he received $1.00 per hour yearly pay raises.

3

Wass testified that he did not intend for the letter agreement he and Thompson signed to be a five-year contract:

> Well, what we were trying to do at the time was establish some type of pay scale for him so when he came aboard we could try to establish what his pay rate was going to be and set up some bonuses and just try to determine where he could be within any time period, per year, one year up to five years.
>
> All we were trying to do is set down some parameters for him to realize his potential and say, okay, with this company if you are here up to five years, you could be making "X" amount of dollars per hour and you could achieve this and beyond this period, you could go further than that. We just kind of left the constraint here to kind of give him some parameters to adjust for his cost of living, over time, perhaps, and for him to get an ideal [sic] were [were] he could be provided everything worked out.
>
> But in no way, shape or form, as the good Lord as my witness, was there ever any intent here for this to be guaranteed employment for five years. It was just a pay scale type thing and that is all it was.

David Burt, Telco's Chief Financial Officer, testified that none of the other approximately two hundred seventy Telco employees have any type of employment contract.

The parties also testified about the application and enforcement of the employee guidelines. The Telco Employee Guidelines, signed by Thompson in January, 1993, provide: "If you clock-in after 8:00 a.m., you do not get a morning break. There are no exceptions! Anyone not adhering to this policy will be docked 15 minutes." Thompson had several disciplinary action reports indicating that he arrived late for work, but took a morning break in violation of the employee guidelines. Thompson was written up on October 24, 1994, January 31, 1995, August 1, 1995, August 3, 1995, and August 7, 1995. Thompson did not dispute that the reports were filled out on him, but testified that he had not seen one of them.

Thompson testified that he routinely arrived after 8:00 a.m. for work and that, prior to the fall of 1994, Telco management never told him it was necessary to arrive exactly at 8:00. He never received any admonitions concerning his failure to work forty hours per week. Thompson testified that he never refused work; he simply did whatever Wass brought him to do. He also denied being insubordinate to any manager at Telco.

Thompson testified that he did not believe that all of the employee guidelines applied to him based on statements allegedly made by Wass that he should not worry about certain rules such as break times or arrival by 8:00 a.m. He admitted that the parties' letter agreement did not say that the employee guidelines did not apply to him.

4

Telco introduced Thompson's personnel file showing that Thompson consistently worked less than forty hours per week. Telco also introduced into evidence the employee personnel files for several other telephone repair technicians showing they worked considerably more hours than Thompson.

Samuel Price Johnson, the Technician Supervisor at Telco, testified about the change in Telco's product mix. He also testified that other telephone repair technicians worked overtime while Thompson did not, which created morale problems with the other workers. Chris Kivalon, the Production Control Manager at Telco, testified that Thompson's habit of coming in late for work and nevertheless taking a morning break created morale problems in his department because he strictly enforced the employee guidelines against the employees in his department.

Wass, Thompson's immediate supervisor, also testified that the product mix of the company changed over the years Thompson was employed. He testified that, although Thompson never refused work, Thompson indicated that he preferred not to work on certain products. He denied telling Thompson that some of the employee guidelines did not apply to him, but admitted that he did not write Thompson up for violations of the guidelines until October, 1994.

Timothy James Burgin, Telco's General Manager, testified that he wrote Thompson up several times for violations of the employee guidelines. Burgin testified that, at a meeting about one of the discipline reports, Thompson told him that, if Telco was not satisfied with his performance and wanted to terminate him, the company would have to buy out the remainder of his contract.

David Burt, Telco's Chief Financial Officer, testified that, on the day Thompson was fired, Thompson requested that Telco find a way to get him unemployment benefits. Burt explained why he wrote the letter listing "lack of work" as the reason for Thompson's termination:

> [D]uring the day that Kerry was terminated, he was requesting that we work out a way so that he would receive unemployment benefits. We thought about it and I talked it over with the other members of management over the next couple of days before he called us back and, you know, we reviewed the reasons for why he was terminated and we just kind of rationalized that there really was a lack of work and he wasn't giving us a good 40 hours a week and so forth. And, you know, although I realize now that wasn't the best decision I have ever made, that was the decision that we did make and we worded it that he had been laid off due to lack of work for that reason.

Wass stated that he was not involved in the decision to state that Thompson was terminated for "lack of work." He testified that Thompson was terminated for breaking the rules and not being able to adapt to the changes occurring in the company.

Tim Burgin testified, that at the August 8th termination meeting, Thompson became upset about the prospect of not having any income. At first, according to Burgin, Thompson demanded his annuity check and then asked if there was a way to word the termination letter so that he could receive unemployment compensation benefits. Burgin admitted that the real reason for Thompson's termination was insubordination and failure to follow the employee guidelines. The termination report in Thompson's personnel file stated that Thompson was terminated for "Repeated violations of Rules, Disregard for authority, Unsatisfactory performance (amount of out put for time spent)" and for "violation of contract - not working 40+ hours."

In an a memorandum opinion, the trial court concluded that the April 10, 1992 letter agreement was a contract for a five-year term. It found that "[t]o the extent that there are conflicts between the testimony of plaintiff and the testimony of Greg Wass and Tim Burgin, the court credits the testimony of plaintiff." In addition, the trial court found that Telco had waived its right to rely upon the employee guidelines as a reason for termination, because of its habitual failure to enforce them. The trial court awarded Thompson $62,235 plus interest.

> Regarding the unemployment compensation benefit funds, the trial court ordered:

> IT IS FURTHER DECLARED AND DECREED that the fund in the amount of Five Thousand Six Hundred Eighty Four Dollars and 38/100 now held by the Clerk and Master pursuant to prior orders is hereby escheated to the State of Tennessee and the clerk is directed to furnish appropriate notice to the State Treasurer in accordance with T.C.A. § 31-6-114.

On appeal, Telco argues that the April 10, 1992 letter agreement was not a contract for a five-year term of employment, and that it had good cause to terminate Thompson. Telco argues that the trial court erred in not dismissing the lawsuit after finding that Thompson had unclean hands. Telco contends it was error for the trial court to *sua sponte* strike its defense of accord and satisfaction before Telco introduced evidence on the defense. Telco asserts that the trial court erred in finding that Telco waived its right to enforce the employee guidelines. Telco also argues that the amount of the judgment was erroneous because it was not supported by the evidence and because the trial court did not consider Thompson's duty to mitigate damages. Thompson maintains that the award of damages should be affirmed, but argues that the trial court erred in requiring him to reimburse the unemployment compensation benefits he received.

Our review of this case is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that review of findings of fact by the trial court shall be *de novo* upon the

record of the trial court, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Findings of law are not entitled to a presumption of correctness and our review is *de novo*. *See Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992).

Telco argues first that the April 10, 1992 letter agreement was not a contract for a definite term of employment. Telco does not dispute that the letter agreement was a valid contract regarding Thompson's compensation and other benefits if he remained employed. Thus, Telco argues that the letter created a guaranteed compensation level if Thompson remained employed, but not a guarantee of employment for a specific term.

Thompson argues that the circumstances show that the parties meant the letter agreement to be a five-year employment contract, such as Thompson's testimony that he would not have left his prior job without a contract. Thompson also points to statements by Telco employees that Thompson had a contract, such as Burgin's statement in Thompson's termination meeting that working less than forty hours a week was a breach of his employment contract, as well as the termination report stating that Thompson violated the contract by not working forty hours a week.

Tennessee has long adhered to the doctrine of employment at will. *See Bennett v. Steiner-Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992). Under the employment at will doctrine, in the absence of a clear contractual agreement, either party in the employment relationship may terminate the relationship at any time, with or without cause. *See id.* "[T]here is a presumption that an employee is an employee at will. This presumption must be overcome by specific language guaranteeing a definite term of employment." *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). Employment for an indefinite term is employment at will. *Nelson Trabue, Inc. v. Professional Management-Automotive, Inc.*, 589 S.W.2d 661, 663 (Tenn. 1979); *Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. App. 1992).

Telco cites *Loeffler v. Kjellgren*, 884 S.W.2d 463 (Tenn. App. 1994), in support of its argument that the letter agreement was not a five-year contract. In *Loeffler*, an employee sued his former employer for breach of contract, based on a letter that the employee asserted was a contract. During the employment negotiations, the employer sent the employee the following letter:

> This letter will confirm my interest in employing your services to establish and run a plastic company (splash guards).

As you requested, I have outlined your expectations for compensation:
1) First year salary          $45,000.00
2) Second year salary         $50,000.00
3) Participation in group insurance plan provided by Fleetline.
4) Reimbursement for relocation to Tennessee
5) After working for four (4) years, you will be provided a $25,000.00 per year for four (4) years for consulting fees.

Thanking you, in advance, and hoping to hear from you in the very near future, I remain,

Yours very truly,

Fred M. Kjellgren
President

*Id.* at 466. The trial court directed a verdict on the breach of contract claim, finding that the letter did not constitute an offer. *See id.* at 467. The appellate court found no material evidence to support the employee's claim that the letter was a contract. *See id.* at 468. The appellate court stated that "[t]he letter merely confirms defendants' 'interest' in employing plaintiff's services and outlines, per plaintiff's request, plaintiff's 'expectations for compensation.' The letter does not offer the plaintiff a contract of employment for an eight year term." *Id.* The court noted that, in order to overcome the presumption in Tennessee that employment is terminable at will, "the employer must use specific language which guarantees employment for a definite term." *Id.* The *Loeffler* court concluded that the letter "simply set forth what plaintiff could expect to earn by way of compensation if he continued to work for Fleetline; there is no guarantee of employment for a definite term." *Id.*

Telco also cites *Brock v. Provident Life and Accident Insurance Co.*, No. 03A01-9509-CV-00297, 1996 WL 134943 (Tenn. App. Mar. 27, 1996). In *Brock*, when all of the plaintiff employees were originally hired, they signed documents explaining that their employment was at-will. *See id.* at **1. The employees argued, however, that a subsequent letter accepting them into a special project unit within the company created an employment contract for a specific term. *See id.* at **2. The subsequent letter read, "This project assignment period is between 2 ½ to 3 years." *Id.* The trial court concluded that the letter did not change the employees' status from at-will employment, and this was affirmed on appeal. *See id.* at **4-5. Relying on *Loeffler*, this Court found no language guaranteeing employment or stating a specific term for employment. *See id.* at **4. The Court also noted that other language in the second letter stated that it was not a contractual agreement. *See id.*

Thompson distinguishes *Loeffler* by noting that the letter in *Loeffler* merely indicated an interest in hiring the employee, while the letter in this case was an agreement reflecting the intent of the parties. In this case, it is undisputed that the letter agreement was an employment contract; the dispute is whether the parties intended the terms of the contract to include employment for a definite term of five years. The only language in the letter that is arguable is the provision that Thompson "will be guaranteed a minimum $1.00 per hour raise per year over the next five (5) years." Clearly the import of this statement is to convey the level at which Thompson would be compensated, not the length of time he would be employed. Under Tennessee caselaw, the reference to five years is not sufficiently specific to create a contract for a definite term of employment. *See Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Spp.. 1273, 1280 (M.D. Tenn. 1990); *Brock v. Provident Life and Accident Ins. Co.*, No. 03A01-9509-CV-00297, 1996 WL 134943, at **4 (Tenn. App. Mar. 27, 1996); *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn. App. 1994). Moreover, the testimony of the parties does not indicate that the parties intended to create an agreement for employment for a definite term. Wass, the person who signed the letter agreement on behalf of Telco, testified that he had no intent to create a contract for employment for a five-year term. Thompson testified that, at the time he signed the letter agreement, his concern was that he would be guaranteed forty hours per week, so that his hours could not be reduced to part-time. Even Thompson did not testify that he intended to create a contract of employment for a definite five-year term. Under all of these circumstances, we must conclude that the evidence preponderates against the trial court's finding that the letter agreement constituted an agreement of employment for a definite five-year term. Thompson was an employee at will, and his termination did not breach the agreement between the parties. Therefore, the trial court's award of damages to Thompson in the amount of $62,235 must be reversed.

This holding pretermits the other issues raised by Telco on appeal.

Thompson argues on appeal that the trial court erred in ordering him to pay into court the monies he received as unemployment compensation benefits and then decreeing that the monies escheated to the State. The trial court's order instructing Thompson to refund the monies did not find that the parties fraudulently entered into the termination letter in an effort to defraud the State, but stated that "a violation of T.C.A. § 50-7-709 may have occurred." After the Tennessee Department of Employment Security refused to accept the funds from Thompson, the trial court

granted Thompson permission to pay the funds to the clerk of the court. When the trial court decreed that the funds escheated to the State, it ordered the clerk to furnish appropriate notice to the State Treasurer in accordance with Tennessee Code Annotated § 31-6-114.[2]

We must conclude that the trial court implicitly found that the parties had entered into an agreement to defraud the State, based on the parties' testimony that Thompson was not terminated for "lack of work." However, even if "lack of work" was not the true reason for Thompson's termination, there was no finding by the trial court that Thompson was terminated for a reason that would disqualify him from receiving unemployment benefits. Unless Thompson would not have received unemployment compensation benefits but for the statement that he was terminated for "lack of work," there can be no finding that he fraudulently received the benefits. From the record, it appears that the reasons for Thompson's discharge were excessive tardiness, repeated violation of the company rule against taking a break when an employee is tardy, and unsatisfactory job performance by failing to adapt to changes in the company and failure to work sufficient hours.

The disqualifications for receiving unemployment compensation benefits include, among other reasons, "misconduct connected with [the] claimant's work . . . ." Tenn. Code Ann. §50-7-303 (Supp. 1998). The burden of proving disqualification for benefits is on the employer. *Simmons v. Culpepper*, 937 S.W.2d 938, 945 (Tenn. App. 1996). Under some circumstances, actions such as excessive tardiness, repeated violations of company rules and failure to work sufficient hours may amount to "misconduct" under the statute if "the whole of the facts reveal that [the] actions exhibit a wanton, careless, and negligent disregard for the interest of" the employer. *Id.*

---

[2] This section, involving the joinder of the treasurer, reads:

(a) In any case in any court of this state involving the title to any property, including but not limited to proceedings involving the validity or construction of wills, where it shall appear that such property may be subject to escheat under this chapter, the state treasurer shall be made a party defendant therein, either in the original pleadings, on motion of any party, on petition of the treasurer, or by the court on its own motion. Process shall be served on the treasurer as otherwise provided by law, and after making such investigation as he deems appropriate, he shall, through the attorney general, file such pleadings and take such position as may be determined to best protect the interest of the state.

(b) In any such case, if the court decrees that the property has escheated to this state under this chapter, then no further proceeding shall be necessary to establish the state's right thereto and such property shall be disposed of by the treasurer as herein provided for other property escheating to the state.

Tenn. Code Ann. § 31-6-114 (1984).

In this case, however, Thompson's actions, while warranting discharge, do not amount to the type of misconduct that would disqualify him from receiving unemployment compensation benefits. Consequently, since Thompson would not have been disqualified from receiving unemployment compensation benefits even if he had not been given the letter stating that he was terminated for "lack of work," there can be no finding that he fraudulently received the benefits. On this basis, we conclude that the trial court erred in requiring Thompson to pay the monies into court and then ordering the funds escheated to the State. We do not reach the issue of whether the trial court had authority *sua sponte* to take these actions regarding the unemployment compensation benefits. Since the State is not a party to this appeal we do not order the State to repay the funds to Thompson; however, nothing in this Opinion precludes Thompson from filing an action against the State to recover the monies. All other issues raised on appeal are pretermitted.

In sum, we find that the letter agreement lacks language expressly guaranteeing a definite term of employment, and that consequently Thompson was an employee at will. Therefore, the trial court's award of damages for breach of contract is reversed. In addition, the trial court erred in ordering Thompson to pay into court the unemployment compensation benefits and in ordering that the unemployment compensation benefits be escheated to the State.

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to Appellee, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**BEN H. CANTRELL, J.**


_____
**WILLIAM C. KOCH, JR., J.**