# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 1, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

EVELYN LOGUE,                          )
                                       )
    Petitioner/Appellant,          )
                                       )
VS.                                    )     Appeal No.
                                       )     M1999-02555-COA-R3-CV
                                       )
THE SHELBYVILLE HOUSING                )
AUTHORITY, THE BOARD OF                )     Bedford Chancery
COMMISSIONERS for the                  )     No. 22,024
SHELBYVILLE HOUSING                    )
AUTHORITY, and HAROLD                  )
ROSE, in his official capacity as      )
Chairman of THE BOARD OF               )
COMMISSIONERS for the                  )
SHELBYVILLE HOUSING                    )
AUTHORITY,                             )
                                       )
    Respondents/Appellees.         )

APPEALED FROM THE CHANCERY COURT OF BEDFORD COUNTY
AT SHELBYVILLE, TENNESSEE

THE HONORABLE TYRUS H. COBB, CHANCELLOR

FOR APPELLANT:

W. GARY BLACKBURN
JOHN R. CALLCOTT
414 Union Street, Suite 2050
Nashville, Tennessee 37219

FOR APPELLEES:

JOHN R.WHITE
Union Planter's Bank Building,
Suite 202
Shelbyville, Tennessee 37160

STEVEN M. BERNSTEIN
DARREN T. HORVATH
945 East Paces Ferry Road
Atlanta, Georgia 30326

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

**O P I N I O N**

The controlling issues in this appeal are (1) whether under the terms of an employee policy manual the dismissed employee was something other than an employee at will, and (2) whether the action of the Board of the Shelbyville Housing Authority in upholding the dismissal was arbitrary or illegal or lacked material evidence to support it. The Chancery Court of Bedford County reviewed the record and found that the Board's action was supported by substantial and material evidence and was not arbitrary nor illegal. We affirm.

**I.**

Early in 1998 Evelyn Logue, a Public Housing Manager with the Shelbyville Housing Authority, received a written disciplinary warning for insubordination and disrespectful treatment of other employees. The charge arose from several incidents where Ms. Logue gave orders to employees in another department in violation of the Authority's chain of command. Ms. Logue refused to accept the warning and insisted on presenting her case to Mr. Thrasher, the Executive Director of the Authority.

Mr. Thrasher met with Ms. Logue, her immediate supervisor, and the head of the department whose workers had complained about Ms. Logue's dictatorial conduct. The meeting did not go well. Ms. Logue insisted that she had done nothing wrong; she questioned the veracity of her supervisor, the other department head, and the men who had complained.

After considering the matter overnight Mr. Thrasher terminated Ms. Logue for insubordination toward a supervisor and disrespectful treatment of other employees. Ms. Logue appealed to the Board of the Housing Authority,

and the Board dismissed the insubordination charge but found that Ms. Logue had been disrespectful to other employees.

## II.
## Ms. Logue's Employment Contract

Ms. Logue contends that the Authority's policy manual conferred on her certain contract rights, among which was the status of a permanent employee that could only be dismissed for causes set out in the manual. The Authority counters with the argument that she was an employee at will.

The courts have had many occasions to review the status of employees under company handbooks, policy manuals, or manuals of operation. The results have been varied, but the courts arrived at different conclusions through the application of some fixed principles. The first is a presumption that employees in Tennessee are employees at will. *Rose v. Tipton County Public Works Department*, 953 S.W.2d 690 (Tenn. Ct. App. 1997). Therefore a contract for an indefinite time is a contract at will, and may be terminated by either party at any time without cause. *Bringle v. Methodist Hosp.*, 701 S.W.2d 622 (Tenn. Ct. App. 1985); *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395 (Tenn. Ct. App. 1981). A promise of permanent employment is a promise for an indefinite term unless supported by consideration beyond the services to be furnished by the employee. *Nelson v. Martin*, 958 S.W.2d 643 (Tenn. 1997). An employee manual or handbook that creates a definite term or other employee benefit must contain specific language showing the employer's intent to be bound by the handbook's provisions. *Smith v. Morris*, 778 S.W.2d 857 (Tenn. Ct. App 1988). The reservation of a unilateral right to change the handbook contradicts an intent to be contractually bound by its provisions. *Id.*; *Williams v. Memphis Housing Authority*, No. 02A01-9608-CV-00190, 1997 WL 287645 (Tenn. Ct. App. June 2, 1997).

In this case, the personnel policy provided that the power to appoint, promote, transfer, demote, suspend and separate personnel is vested in the Executive Director of the Agency. In another section under the broad heading of "Dismissals" the policy provides: "The Executive Director may dismiss or demote any employee in the Shelbyville Housing Authority." The policy also provided for a probationary period of six months during which the Executive Director must make "a decision as to whether the employee should be dismissed or placed in the position permanently." If the Executive Director does not act, "the employee shall automatically achieve regular status."

After giving the Executive Director blanket authority to dismiss or demote any employee, the policy provides a long list of reasons for dismissal, but also states that the list is not exclusive. Among the listed reasons are "insubordination that constitutes a serious breach of discipline" and "disgraceful personal conduct or language toward . . . fellow officers or employees." Disrespect of fellow employees is not a listed reason for dismissal.

Finally, the policy provides that it may be amended by a resolution of the Board.

Viewing the policy as a whole and in light of the legal precedents in this state, we conclude that the personnel policy did not become a part of Ms. Logue's employment contract with the Shelbyville Housing Authority. The Authority's reservation of a right to amend the policy generally precludes that conclusion. *Smith v. Morris*, 778 S.W.2d 857 (Tenn. Ct. App. 1988); *Williams v. Memphis Housing Authority*, No. 02A01-9608-CV-00190, 1997 WL 287645 (Tenn. Ct. App. June 2, 1997). The policy also lacks the specific evidence of an intent to be bound by its provisions that we have held is essential to a finding of a binding contract. *Smith v. Morris*, 778 S.W.2d 857 (Tenn. Ct. App. 1988).

Even if the policy did make a binding contract with the employee, its provisions did not guarantee that Ms. Logue would be employed for a definite term or that she could only be terminated for cause. The policy specifically provides that the Executive Director had the unrestricted right to terminate employees – subject to a review by the Housing Authority itself. The list of reasons for dismissal set out in the policy is non-exclusive and may be taken only as illustrative. In other words, the policy itself leaves Ms. Logue as an employee at will.

### III.

### The Board's Action

The conclusion that the personnel policy does not create a contract with the Authority's employees makes most of the issues raised on appeal moot. Ms. Logue argues that the initial disciplinary proceeding had been closed with a simple reprimand and that she was dismissed for protesting her innocence before Mr. Thrasher; that the Board, therefore, affirmed her dismissal on a ground for which she was not disciplined; and that the Board ignored its own procedural rules in dealing with her appeal.

We think this version of the facts ignores the undisputed testimony that when she was first reprimanded for being disrespectful to the maintenance workers and their supervisor, Ms. Logue refused to accept the discipline, refused to sign the reprimand, stated this is "not over", and insisted on taking the matter to Mr. Thrasher. At that hearing she inpugned the truthfulness of all the Authority's employees involved, including the head of her department and the head of the maintenance department. After viewing this episode, Mr. Thrasher

decided to terminate her. It is, therefore, not accurate to say that Ms. Logue's case was closed with only a reprimand. She chose to keep it open.

Mr. Thrasher did testify that had Ms. Logue accepted the responsibility for her prior acts, the matter would have been settled with the reprimand. We do not think, however, that Mr. Thrasher was bound to let the matter stay there when Ms. Logue's protestations of innocence included a charge that her co-workers and two supervisors (including her own) were lying.

With respect to the procedural requirements of the personnel policy, we think the Board substantially complied with them. As we have pointed out the policy gave a terminated employee the right to have the Board review the Executive Director's action. The policy also provided that the employee would be given written notice of the Executive Director's proposed action one week prior to the effective date, in order to allow an appeal to the Board. That provision was not complied with in this case, but the Board granted the appeal (rescinded the termination) and when Ms. Logue's attorney sought a clarification of the charges against her he received the following specification from the Board's attorney:

(1) Over the past two years, Ms. Logue has engaged in a pattern of conduct that included directing orders to individuals over whom she had no supervisory authority.

(2) This practice was inconsistent with internal policy requiring employees to respect the hierarchy of supervision within the office, and to refrain from instructing employees outside the chain of command.

(3) Ms. Logue was reminded of this policy and counseled to abide by it in recent months, yet she continued to deviate from it.

(4) On Saturday, February 28th , Ms. Logue again violated this policy by directing maintenance employees to perform work in the office area, bypassing both the maintenance manager and the maintenance superintendent in the process.

This contravened previous directives given to Ms. Logue.

(5)     Ms. Logue compounded the problem by berating these individuals and treating them with a lack of respect, despite the fact that she exerted no supervisory authority over them.

(6)     On Monday, March 2nd, the maintenance employees responded by complaining to the maintenance superintendent, who in turn directed their concerns to the maintenance manager.

(7)     That same day, Ms. Logue again deviated from the chain of command by directly instructing maintenance employees to leave the field and report to her office, without the knowledge or consent of any supervisor or manager in the maintenance department. In a loud tone of voice, Ms. Logue subsequently attempted to give orders to the maintenance manager when he questioned her about it.

(8)     On Wednesday, March 4th, Ms. Logue was presented with a written warning documenting the Authority's concerns over her recent misconduct, including insubordinately refusing to direct her instructions through maintenance supervision, and treating her maintenance co-workers with disrespect.

(9)     In a meeting held later that day, Ms. Logue refused to accept responsibility for misconduct that had since been confirmed. Instead, she simply insisted that no witnesses would come forward to corroborate the charges against her.

(10)    On Thursday, March 5th, a second meeting was convened in the presence of the Director. Ms. Logue again denied the charges, questioning the veracity of all witnesses to the events of February 28th. Ms. Logue again refused to accept responsibility for her misconduct, leaving the Director with no choice but to terminate her employment.

The Board heard the proof and upheld the dismissal. We think Ms. Logue's rights were protected at all levels.

We conclude that the Board's action was not illegal, arbitrary, nor capricious, and that its findings were supported by substantial and material evidence. *See McCallen v. City of Memphis*, 786 S.W.2d 633 (Tenn. 1990).

-8-

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Bedford County for any further proceedings that may become necessary. Tax the costs on appeal to the appellant, Evelyn Logue.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE